Harley J. GILLIE, Appellant,

v.

H. Jay BOULAS, M.D., Appellee.

No. 05–00–00207–CV.

Court of Appeals of Texas,
Dallas.

Nov. 20, 2001.

Rehearing Overruled Jan. 18, 2002.

Charles W. McGarry, Thurman & Andres, P.C., Dallas, for appellant.

Maureen Murry, Christopher Lee Barnes, Thompson & Knight, P.C., Dallas, for appellee.

Before Justices LAGARDE, MORRIS, and JAMES.

## OPINION

Opinion By Justice LAGARDE.

Harley J. Gillie appeals the trial court's final order granting a directed verdict in favor of H. Jay Boulas, M.D. in this medical malpractice case. Gillie presents six issues for review: (1) whether the trial court erred in allowing Gillie's trial counsel to withdraw; (2) & (3) whether the trial court erred in denying Gillie's motions for continuance of both the hearing on Boulas's *Robinson* motion and of the trial; (4) whether the trial court erred in granting Boulas's *Robinson* motion to exclude Gillie's medical experts; (5) whether striking Gillie's medical experts constituted death penalty sanctions; and (6) whether the trial court erred in granting a directed verdict in favor of Boulas. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gillie filed this lawsuit on December 10, 1996, alleging that Boulas misdiagnosed Gillie's Reflex Sympathetic Dystrophy (RSD) as carpal tunnel syndrome, failed to diagnose and treat Gillie's RSD, rejected other doctors' RSD diagnoses, and aggravated Gillie's condition by performing carpal tunnel surgery. Gillie was represented by attorneys with the firm of Sumner & Schick, later known as Sumner, Schick & Scroggins (Sumner).

The case was initially set for trial on August 27, 1997, then reset for the following dates: March 30, 1998, August 10, 1998, July 12, 1999, and September 13, 1999.

On August 11, 1999, Sumner moved to withdraw from the case, asserting a conflict. On August 30, 1999, the trial court granted the motion to withdraw, stating in its order "the current trial date set for September 13, 1999 will be reset for a reasonable time for Plaintiff to obtain new counsel." The September 13, 1999 trial setting was later postponed until January 10, 2000.

On December 20, 1999, Boulas filed a *Robinson* motion seeking to exclude Gil-

lie's medical experts.[1] The hearing on Boulas's *Robinson* motion was set for January 3, 2000. After receiving the *Robinson* motion on December 23, 1999, Gillie filed no response. On December 30, 1999, Gillie's new counsel filed a "special appearance" and motion for continuance stating they were considering taking Gillie's case, but would not do so unless the court granted a ninety-day extension and additional time to obtain experts.[2] However, the trial court master granted Boulas's *Robinson* motion on January 3, 2000.

On January 5, 2000, the trial court conducted a pretrial conference. Gillie's new counsel (still not counsel of record) again requested additional time to prepare for trial. The trial court concluded Gillie had sufficient time to obtain counsel and prepare for the January 10, 2000 trial setting.

On January 7, 2000, Gillie objected to the trial court master's grant of Boulas's *Robinson* motion, complaining that the motion was "untimely" and that he had insufficient time to respond to the motion without a continuance, which the master refused. On January 10, 2000, the trial court by order excluded Gillie's experts.

Also on January 10, 2000, Gillie filed another written motion requesting a ninety-day continuance to prepare for trial. In his motion, Gillie stated his physical and mental disabilities rendered him unable to appear *pro se*, and his lack of counsel was not due to his own fault or negligence. The appellate record does not reflect a ruling on Gillie's written motion for continuance. At the commencement of trial, Gillie orally moved for a continuance. After the trial court denied Gillie's oral motion for continuance, Gillie waived a jury, and the case was tried before the court on

January 10, 2000, with Gillie appearing *pro se*. After the close of Gillie's case-in-chief, the trial court granted Boulas's motion for directed verdict on the basis that Gillie had presented no expert testimony to support his medical malpractice claim against Boulas. This appeal ensued.

## WITHDRAWAL OF COUNSEL

■ In his first issue, Gillie asserts the trial court abused its discretion in allowing Sumner to withdraw because the motion to withdraw failed to comply with rule 10 of the Texas Rules of Civil Procedure, rule 1.15 of the Texas Rules of Disciplinary Conduct, and rule 4.02 of the Dallas County Civil Courts Local Rules. Rule 10 governs the withdrawal of counsel in civil cases. *See* TEX.R. CIV. P. 10; *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 113 (Tex.App.—Waco 1999, no pet.). As pointed out by Gillie, Sumner's motion to withdraw failed to comply with rule 10 because it failed to state that Gillie had been notified in writing of his right to object to the motion, and it failed to state all pending deadlines and settings. The motion also failed to comply in various respects with rule 1.15 of the disciplinary rules and rule 4.02 of the civil courts' local rules.

■ A trial court abuses its discretion when it grants a motion to withdraw that does not comply with the mandatory requirements of rule 10. *Williams*, 15 S.W.3d at 114. However, "such error may be harmless if the court allows the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Walton v. Canon, Short & Gaston*, 23 S.W.3d 143, 149 (Tex. App.—El Paso 2000, no pet.); *see also*

---

1. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex.1995).

2. Gillie's "new" counsel did not agree to become counsel of record unless the court granted the requested continuance and additional time for expert designation.

*Williams,* 15 S.W.3d at 115. The trial court's order granting Sumner's motion to withdraw states that "the current trial date set for September 13, 1999 will be reset for a reasonable time for Plaintiff to obtain new counsel." The case was reset for January 10, 2000. We conclude the trial court's continuance of almost four months rendered harmless its error of granting the deficient motion to withdraw.

In support of his arguments, Gillie relies on *Villegas v. Carter,* 711 S.W.2d 624 (Tex. 1986) and *Moss v. Malone,* 880 S.W.2d 45 (Tex.App.—Tyler 1994, writ denied). The cases cited by Gillie are distinguishable and do not persuade us that the trial court's error was harmful. In *Villegas,* the court granted a motion to withdraw two days before trial and then denied the plaintiff's motion for continuance. *Villegas,* 711 S.W.2d at 626–27. However, in this case, the trial court postponed the trial setting for almost four months after granting the motion to withdraw. In *Moss,* after granting a motion to withdraw filed one day before trial, the court postponed the trial for two weeks and later continued the case for twenty-eight days. *Moss,* 880 S.W.2d at 51. Although the court of appeals held that these facts constituted an abuse of discretion, the court stated "[i]f the trial court had given Appellant fifty-seven straight days to 'secure new counsel to investigate the case and prepare for trial' then the equities would be significantly altered." *Id.* Here, the court allowed almost four months for Gillie to obtain new counsel to investigate the case and prepare for trial.

Because the trial court postponed the trial for almost four months after granting Sumner's deficient motion to withdraw, we hold that the court's error was harmless. Accordingly, we resolve Gillie's first issue against him.

## DENIAL OF CONTINUANCES

■ In his second and third issues, Gillie argues the trial court abused its discretion in denying continuances of both the *Robinson* hearing and the trial.

In support of these issues, Gillie first argues the trial court erred in denying the continuances because the basis therefor was the withdrawal of counsel in specific violation of the various rules. Gillie argues that when a trial court allows an attorney to withdraw, the judge must give the party time to secure new counsel and to allow the new counsel to investigate and prepare the case. However, as discussed in connection with Gillie's first issue, the trial court allowed almost four months for Gillie to obtain new counsel and for the new counsel to investigate the case and prepare for trial. *See, e.g., Williams,* 15 S.W.3d at 114 (forty-two days sufficient to secure new counsel and prepare for trial). Gillie has not shown that the trial court's denial of further continuances constituted an abuse of discretion.

Further, Gillie argues he was not negligent in securing new counsel, and the trial court based its decision regarding the continuances on assumptions not supported, or directly controverted, by the evidence. Gillie points out that the trial court repeatedly stated Gillie had six months between the withdrawal and the trial setting, when in fact there were only four months. However, we have previously held four months is sufficient under the facts of this case. The fact that the trial court incorrectly stated Gillie had six months instead of four does not render the four months afforded to Gillie insufficient.

Additionally, Gillie argues the trial court "wrongly assumed" that he had notice of the withdrawal at or before the time it occurred, and when Gillie disputed this assumption, the court rejected his assertions, stating it would require testimony

from the withdrawing attorney to prove lack of notice. Although Gillie states there is "nothing in the record to show that Sumner notified Gillie of the withdrawal order or of anything else," Sumner's motion to withdraw states a copy had been mailed, via certified mail, to Gillie on the day that it was filed, August 11, 1999. The trial court did indicate it would not hear testimony that Sumner failed to notify Gillie of his need to obtain new counsel *unless* Sumner was there to testify on its own behalf in response. However, Gillie's "new" counsel stated at the pretrial hearing, "I'm not aware that the prior attorneys told him that they were not departing from the case. It's only my understanding that he may not have been apprised of the fact that the case was not prepared for trial at that point in time." Thus, there are references in the record establishing that Gillie was notified of the motion to withdraw.[3]

Additionally, Gillie cites the following as examples of the trial court's incorrect assumptions or arbitrariness in denying the continuances: (1) the court indicated evidence that other law firms had turned down Gillie's request for representation would not make any difference in his ruling because there are a multitude of medical malpractice attorneys in Dallas; (2) Gillie could not get the file from Sumner until November; (3) the court refused to consider that the case had been left unprepared for trial; (4) the court indicated that this Court has held thirty days is sufficient time to locate new counsel and to investigate and prepare for trial when it has not so held; (5) due process required a contin-

uance in this case because it is a complex medical malpractice case and Gillie was mentally disabled and could not assist in preparing his case; and (6) the court's desire to move its oldest cases off its docket does not outweigh a party's right to be represented by counsel.

First, we note the record does not reflect either that Gillie's new counsel requested his file prior to November or that Gillie is mentally disabled. Further, we hold that the trial court's initial continuance postponing the trial for almost four months after allowing Sumner to withdraw rendered harmless the error, if any, in the court's above-referenced actions. Other courts have held shorter periods of time sufficient to obtain new counsel and prepare for trial. *See, e.g., Williams,* 15 S.W.3d at 114. Gillie was *not* deprived of his right to be represented by counsel; he simply failed to secure representation within the time provided by the trial court.

Finally, Gillie argues that it was brought to the trial court's attention that Gillie had filed for bankruptcy protection, and thus the case should have been subject to an automatic stay. This argument is without merit and has previously been adjudicated by this Court. On October 30, 2000, in this appeal, this Court issued an order rejecting Gillie's "Suggestion of Bankruptcy" that sought a stay of this case. That order stated: "Lawsuits initiated by a debtor are not subject to the automatic stay." This Court's previous ruling stands.

We reject all of Gillie's arguments asserted in connection with his second and

---

**3.** Gillie argues the trial court wrongfully imposed on Gillie the burden it should have imposed on Sumner by requiring testimony from Sumner to prove Gillie's lack of notice. Gillie argues that, if the trial court had enforced the requirements of Texas Rule of Civil Procedure 10 and Local Rule 4.02, the re-

quired notice would have been proven in the record. However, this argument is unfounded. The motion clearly stated a copy had been mailed, via certified mail, to Gillie. Thus, it complied with the rules' requirements that the motion be sent to the party.

third issues. Because Gillie has not established the trial court abused its discretion by denying continuances of either the *Robinson* hearing or the trial, we resolve both of these issues against him.

### EXCLUSION OF GILLIE'S EXPERTS

In his fourth issue, Gillie contends the trial court abused its discretion in granting Boulas's *Robinson* motion and excluding Gillie's medical experts. In his *Robinson* motion, Boulas presented three grounds for the exclusion of Gillie's experts: (1) Gillie's allegation that Boulas failed to diagnose RSD is not supported by scientifically reliable evidence; (2) Gillie's experts provide no scientifically reliable evidence that the surgery performed by Boulas aggravated the alleged RSD; and (3) the theory of Gillie's experts regarding the effects of an early treatment of RSD with sympathetic blocks does not meet the *Robinson/Havner* standard. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997); *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex.1995).

In support of this issue, Gillie argues: (1) medical diagnosis and treatment can be based on experience alone, and need not be based on the kind of scientific testing described in *Robinson* and *Havner*; (2) the first two grounds relied upon in Boulas's *Robinson* motion are legally insufficient to exclude Gillie's experts in their entirety; and (3) Boulas's own *Robinson* motion showed that Gillie's expert evidence regarding causation was reliable. Gillie concedes that Boulas's causation challenge, if sustained, is legally sufficient to merit the exclusion of all of Gillie's experts. Thus, we will address that argument first.

■ In this case, Gillie bore the burden of establishing that his experts were qualified and that their testimony was relevant to the issues in the case and based upon a reliable foundation. *Robinson*, 923 S.W.2d at 556. In his motion to exclude Gillie's experts, Boulas argued they failed to rule out causes *other than RSD* for Gillie's symptoms. Thus, Boulas argues, the trial court did not abuse its discretion in excluding the experts. In response, Gillie contends the requirement that experts rule out other possible causes for the same injury or condition applies only to "general causation," and it was not necessary to exclude other causes of Gillie's symptoms. Gillie further contends that arguments regarding other possible causes go to the truth or falsity of the expert's opinion, and not to the reliability of the expert's methodology. Although the record reflects that Gillie's experts identified other possible causes for his symptoms, at no point does Gillie argue his experts did, in fact, conduct differential diagnoses or otherwise exclude any of these other possible causes.

We conclude the exclusion of other possible causes of Gillie's symptoms goes to the very heart of his case. Gillie's primary allegations in this case were that Boulas failed to diagnose and treat his RSD, misdiagnosed his RSD as carpal tunnel syndrome, and rejected other doctors' RSD diagnoses. It is elementary that Gillie's experts would have to first establish that Gillie, in fact, had RSD. Any methodology that fails to rule out other possible causes for Gillie's symptoms does not satisfy the *Robinson* requirements. *See Havner*, 953 S.W.2d at 720 ("Further, if there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty"); *Robinson*, 923 S.W.2d at 558–59 ("Dr. Whitcomb conducted no testing to exclude other possible causes of the damage to the Robinsons' pecan orchard, even though he admitted in his deposition that many of the symptoms

could be caused by something other than contaminated Benlate.").

Gillie failed to meet his burden of establishing that his experts' testimony regarding the causation of Gillie's symptoms was based upon a reliable foundation. In light of our resolution of this argument, we need not address Gillie's other arguments in support of this issue. The trial court did not abuse its discretion in excluding the testimony of Gillie's experts. Accordingly, we resolve Gillie's fourth issue against him.

### Death Penalty Sanctions

█ In his fifth issue, Gillie argues the striking of his medical experts constituted death penalty sanctions because he was deprived of the opportunity to have his case adjudicated on the merits. Gillie argues the due process requirements of *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991), apply to any sanction levied by a court for failure to comply with a rule of law, not just to discovery sanctions. Gillie further argues the constitutional restrictions on death penalty sanctions required the trial court to consider lesser sanctions (specifically, allowing Gillie time to secure a new expert).

Gillie cites numerous cases in connection with this issue; however, none of them supports his argument that the exclusion of medical expert testimony for failure to meet the standards set forth in *Robinson* constitutes a death penalty sanction. Instead, virtually all of the cases relied on by Gillie involve sanctions imposed for abuse of the discovery process, which are proce-

dural deficiencies.[4] Although some of the cases cited by Gillie involve the exclusion of expert testimony, the exclusion of the experts resulted from discovery abuse, *not* from the expert's failure to satisfy threshold requirements for evidentiary admissibility.

Gillie has presented no authority supporting his argument that the exclusion of expert testimony as inadmissible amounts to a death penalty sanction when it renders a plaintiff unable to establish essential elements of his cause of action. An exclusion of such testimony for admissibility reasons, as opposed to a sanction for discovery abuse, is for a substantive deficiency and does not constitute a "sanction," death penalty or otherwise. We hold the *TransAmerican* restrictions on sanctions do not apply to a trial court's exclusion of expert testimony due to its failure to satisfy the relevance and reliability standards set forth in *Robinson*. Accordingly, we resolve Gillie's fifth issue against him.

### Directed Verdict

In his sixth and final issue, Gillie argues the trial court erred in granting a directed verdict in favor of Boulas based upon the absence of expert testimony on negligence and causation. This issue is premised entirely on the success of Gillie's arguments challenging the exclusion of his medical experts. Because we have held the trial court did not abuse its discretion in excluding Gillie's experts, this issue is without

---

4. One of the cases cited by Gillie, *Friedman & Associates v. Beltline Road, Ltd.*, 861 S.W.2d 1, 1 (Tex.App.-Dallas 1993, writ dism'd by agr.), involved rule 13 violations, as opposed to discovery abuse. However, *Friedman* is equally distinguishable from this case because it did not involve a *Robinson* challenge or the exclusion of an expert witness. Additionally, two of the cases cited by Gillie are not proper authority either due to being unpublished, *In re L.A.M. & Assocs.*, No. 04–97–00896–CV (Tex.App.—San Antonio, May 6, 1998, orig. proceeding), or withdrawn, *Miller v. Massey*, 862 S.W.2d 679 (Tex.App.—Tyler 1993, no writ) (opinion withdrawn).

merit. Accordingly, we resolve Gillie's sixth issue against him.

We affirm the trial court's judgment.