# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00621-CV

**Linda Delgado, Individually and d/b/a Del-Kleen, Inc., Appellant**

**v.**

**Texas Workers' Compensation Insurance Fund,[1] Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. 98-02514, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In four issues, appellant Linda Delgado argues that the district court erred by (1) granting a default judgment and denying her motion for new trial when there is no evidence she was notified of the trial setting, (2) allowing her attorney to withdraw without notice to her, and (3) issuing a final judgment that is not supported by legally and factually sufficient evidence. For the reasons explained below, we will affirm the judgment.

### BACKGROUND

On March 9, 1998, the Texas Workers' Compensation Insurance Fund (the Fund) filed suit against Border Maintenance Services, Inc. (BMS), Miguel Delgado, and Linda Delgado,

---

[1] Effective September 1, 2001, the Texas Workers' Compensation Insurance Fund became Texas Mutual Insurance Company. *See* Tex. Ins. Code Ann. art. 5.76-3, § 2(a) (West Supp. 2005).

individually and d/b/a Del-Kleen, Inc. (collectively, the defendants).[2] The Fund alleged that the defendants "conspired with one another to fraudulently and unlawfully obtain workers' compensation insurance coverage while evading payment of properly calculated premiums." Miguel and BMS were served with citation and promptly filed an answer. The claims against them are not at issue in this appeal.

Linda was personally served with citations in her individual capacity and as the registered agent for Del-Kleen, Inc. An answer was filed on behalf of both her and Del-Kleen by the same attorneys who represented Miguel and BMS. In March 1999, the defendants' attorneys withdrew, and Howard Newton became their attorney of record.

The parties engaged in discovery, filed motions for summary judgment, and participated in other legal proceedings. Newton continued to file and receive pleadings and other documents on behalf of Linda as well as the other defendants. On December 16, 2002, Newton filed a motion to withdraw as counsel. In the motion, Newton stated that the defendants' address "is as follows: Mr. Miguel Delgado; Border Maintenance Services, Inc.; 2300 West Commerce, Suite 205; San Antonio, Texas 78205." Newton also provided a last known telephone number and facsimile number for the defendants.

The court subsequently granted Newton's motion, ordering him to furnish a signed copy of the order to the defendants by certified mail, return receipt requested, first class mail, and facsimile to their last known address: "Border Maintenance Services, Inc., c/o Miguel Delgado, **200 West Commerce, Suite 205, San Antonio, Texas 78205.**" (Emphasis added.) Although the order

---

[2] Miguel and Linda Delgado are siblings. For ease of reference, we will use their first names.

2

contained a typographical error, listing the address as 200 West Commerce instead of 2300 West Commerce, the order accurately listed the telephone number and facsimile number provided by Newton in his motion to withdraw. The court ordered that, until a new attorney of record appeared on behalf of the defendants, notices of settings, deadlines, and filings must be served on them "at their last known address" as listed above.

On June 23, 2003, the case was called for trial. Miguel appeared on his own behalf and also attempted to represent BMS *pro se*.[3] Linda did not appear. Miguel's request for a continuance to find an attorney for BMS was denied and a default judgment was entered against BMS, Del-Kleen, and Linda.

Miguel was permitted to represent himself in his individual capacity. He testified that he was the president of BMS and that he and his wife (not Linda) owned 100% of the stock. BMS had contracts with governmental entities to perform janitorial work; the contracts required BMS to procure workers' compensation insurance. However, Miguel did not want to purchase insurance for every employee of BMS, so he created Del-Kleen in an attempt to use the company to provide insurance for the BMS workers that were performing under his contract with the governmental entities. Miguel testified that in the application for insurance submitted to the Fund, he listed Linda as 51% owner of Del-Kleen, but in reality, no stock was ever issued for Del-Kleen. He admitted that Linda "never really owned anything at all," but stated that she allowed her name to be used on the documents so that Miguel would not appear as a majority owner. Miguel's intent was to prevent the

---

[3] Miguel told the court that he had just learned that morning that he could not represent BMS. *See Kunstoplast of Am., Inc. v. Formosa Plastics Corp.*, 937 S.W.2d 455, 456 (Tex. 1996) (generally, corporation may only be represented by licensed attorney).

3

Fund from charging him premiums for both companies. In the Fund's closing argument, it urged that Del-Kleen was "nothing more than a shell" and that "[i]n fact, nothing was ever done to incorporate the business."

On June 26, the district court entered a final judgment against BMS, Miguel, Linda, and Del-Kleen, finding them jointly and severally liable and awarding damages of $868,162 (actual damages for past due premiums), $694,529 (pre-judgment interest), $80,338 (attorneys' fees and expenses), post-judgment interest, and costs of court. On July 28, BMS, Miguel, and Linda, individually and d/b/a Del-Kleen, filed a motion for new trial with affidavits attached.[4] Linda's affidavit is consistent with Miguel's testimony that she was not involved in the daily operation of the businesses and further avers that she was not aware of the trial setting or the fact that Newton had withdrawn from the case; Miguel's affidavit establishes that he knew Newton had withdrawn and that he received notice of the jury trial on April 17. The Fund did not file a response to the motion. On September 8, the court denied the motion.[5] This appeal followed.

## DISCUSSION

In four issues, Linda argues that the district court erred by (1) granting a default judgment and denying her motion for new trial when there is no evidence she was notified of the trial setting, (2) allowing her attorney to withdraw without notice to her before the case was set for trial,

---

[4] The motion was timely filed because July 26 was a Saturday. *See* Tex. R. App. P. 4.1.

[5] The denial was noted on the docket sheet, but the record does not contain a written order denying the motion.

4

and (3) issuing a final judgment that is not supported by legally and factually sufficient evidence. For convenience, we will address the issues in chronological order.

**Withdrawal of attorney**

First, Linda contends that the district court erred by allowing Newton to withdraw from the case when his motion to withdraw did not comply with rule 10 of the rules of civil procedure and when, she alleges, he did not provide notice to her of his withdrawal.

Texas Rule of Civil Procedure 10 governs the withdrawal of counsel in civil cases. *See* Tex. R. Civ. P. 10; *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.—Dallas 2001, pet. denied). Attorneys may withdraw from cases "upon written motion for good cause shown." Tex. R. Civ. P. 10. Attorneys who are withdrawing without substituting counsel are required to file a written motion stating: (1) that a copy of the motion has been delivered to the party; (2) that the party has been notified in writing of his right to object to the motion; (3) whether the party consents to the motion; (4) the party's last known address; and (5) all pending settings and deadlines. *Id*. If the motion is granted, the withdrawing attorney shall immediately notify the party in writing of any additional settings or deadlines of which the attorney has knowledge at the time of the withdrawal and has not already notified the party. *Id*. The court may impose further conditions upon granting leave to withdraw. *Id*. Notice or delivery to the party shall be either made to the party in person or mailed to the party's last known address by both certified and regular first class mail. *Id*.

We review the court's decision to grant a motion to withdraw for an abuse of discretion. *See Boulas*, 65 S.W.3d at 221; *Walton v. Canon, Short & Gaston, P.C.*, 23 S.W.3d 143, 148 (Tex. App.—El Paso 2000, no pet.); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 114

(Tex. App.—Waco 1999, no pet.); *Moss v. Malone*, 880 S.W.2d 45, 49 (Tex. App.—Tyler 1994, writ denied). A court abuses its discretion when it grants a motion to withdraw that does not comply with the mandatory requirements of rule 10. *Boulas*, 65 S.W.3d at 221; *Williams*, 15 S.W.3d at 114. However, even if the court erred by allowing the attorney to withdraw, we may only reverse the judgment if the error probably caused the rendition of an improper judgment or probably prevented Linda from properly presenting her case on appeal.[6] *See* Tex. R. App. P. 44.1.

On December 16, 2002, Newton filed a motion to withdraw as counsel for the defendants. Newton's motion stated that his clients had failed to cooperate in completing a settlement agreement, ceased to communicate with him, and failed to pay his firm pursuant to the parties' agreement; the motion included the defendants' last known address,[7] telephone number, and facsimile number. The motion does not, however, state: (1) that a copy of the motion has been delivered to the parties; (2) that the parties have been notified in writing of their right to object to the motion; (3) whether the parties consent to the motion; or (4) any pending settings and deadlines.

---

[6] Generally, cases discussing attorney withdrawals conduct a harm analysis within a framework of the denial of a motion for continuance, considering whether the party had sufficient time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see also Gillie v. Boulas*, 65 S.W.3d 219, 221-22 (Tex. App.—Dallas 2001, writ denied); *Walton v. Canon, Short & Gaston, P.C.*, 23 S.W.3d 143, 148 (Tex. App.—El Paso 2000, no pet.); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 114 (Tex. App.—Waco 1999, no pet.); *Moss v. Malone*, 880 S.W.2d 45, 49 (Tex. App.—Tyler 1994, writ denied). However, Linda did not request a continuance because, she contends, she was unaware of the withdrawal until after the final judgment had been entered. Therefore, our harm analysis is limited to whether the attorney's failure to comply with the requirements of rule 10 probably caused the rendition of an improper judgment or probably prevented Linda from properly presenting her case on appeal. *See* Tex. R. App. P. 44.1.

[7] One last known address was given for all of the defendants. It is undisputed that at the time the last known address of Linda was supplied to the court, Newton was still acting in his capacity as attorney of record for Linda.

*See* Tex. R. Civ. P. 10. The certificates of service attached to the motion to withdraw and the notice of hearing on the motion state that a copy of the motion and notice of hearing was sent, via facsimile and certified mail, return receipt requested, to Miguel.

On March 5, 2003, the court granted Newton's request to withdraw. The order granting the withdrawal accurately states that there were no pending settings or deadlines in the case, and orders Newton to furnish a copy of the order to the defendants at their last known address via facsimile, first class mail, and certified mail, return receipt requested. The last known address listed in the order is "Border Maintenance Services, Inc., *c/o Miguel Delgado*, 200 West Commerce, Suite 205, San Antonio, Texas 78205." (Emphasis added.) Telephone and facsimile numbers are also listed. Furthermore, the order states that, until another attorney appeared on the defendants' behalf, notices of settings and filings "shall be served on . . . Linda Delgado at [her] last known address." The record reflects that Newton sent a copy of the withdrawal order, addressed to Miguel, and stated that "[a]s a result of this order, I am no longer the attorney in this matter for you, [BMS], Del Kleen, Inc. and Linda Delgado." The letter recited that it was sent via facsimile, first class mail and certified mail, return receipt requested. On April 17, the case was set for trial on June 23. Trial was held, and a final judgment was entered on June 26.

On July 28, Linda filed an affidavit with her motion for new trial, averring that she

> was not aware that the attorney whom MIGUEL DELGADO had obtained to represent me in this matter had been allowed to withdraw, nor was I aware of the trial setting of June 23, 2003. I have recently learned that the order allowing this attorney to withdraw provided for notices to me to be directed to an address on West Commerce Street in San Antonio, however, I have never lived at or worked at that address, nor have I ever instructed anyone to forward correspondence to me at that address. . . . At all times relevant hereto, I was operating under the mistaken belief

7

that I was represented by counsel and would be advised of any matters that required my attention or presence.

However, in Miguel's affidavit attached to his motion for new trial, he acknowledged that "[i]n March 2003, I received notice from Mr. Newton that Mr. Newton was no longer representing me, [BMS], or Linda Delgado, in this matter."

We find that the district court abused its discretion by granting the motion to withdraw because it does not comply with the mandatory requirements of rule 10. *See* Tex. R. Civ. P. 10; *Boulas*, 65 S.W.3d at 221; *Walton*, 23 S.W.3d at 148; *Williams*, 15 S.W.3d at 114. However, under the facts and record in this case, such error was harmless. *See* Tex. R. App. P. 44.1. The requirements of rule 10 that were omitted from the motion to withdraw were supplied in the order granting the motion. Newton was ordered to provide notice of his withdrawal to his clients—including Linda—by sending a copy of the order to their last known address via facsimile, certified, and regular first class mail. *See* Tex. R. Civ. P. 10. The order also states that there were no pending settings or deadlines—a true statement at the time the order was issued because a trial date had not yet been set. Therefore, we hold that the error was harmless because the omitted requirements were included in the order granting the motion to withdraw.

Moreover, the record conclusively establishes that Newton sent the copy of the order to the address that he, as her attorney of record, supplied to the court as her last known address, and that it was received at that location. Therefore, because notice of the withdrawal was sent to and received at the location provided by Linda's attorney as Linda's last known address, she received

8

constructive notice of the withdrawal. *See* Tex. R. Civ. P. 10; *see also Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (notice of trial).

We overrule Linda's third issue.

**Procedural issues**

Next, the Fund argues that we should not review the district court's denial of the motion for new trial based on the *Craddock* elements because the final judgment supersedes any interlocutory default judgment as to liability that was granted against Linda, and the final judgment does not recite that a default judgment was ever granted. *See Craddock*, 133 S.W.2d at 126 (elements used in analyzing propriety of new trial); *see also Lopez v. Lopez*, 757 S.W.2d 721, 722 (Tex. 1988) (defendant alleging lack of notice of trial entitled to review of post-answer default judgment under modified *Craddock* factors).

Judgment is rendered when a district court officially announces its decision in open court or by written memorandum filed with the clerk. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857-58 (Tex. 1995) (citing *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982)). The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made. *Leal*, 892 S.W.2d at 858.

At the beginning of the bench trial, the Fund specifically requested "an interlocutory default judgment as to liability with respect to Border Maintenance Services, Linda Delgado and Del-Kleen, Inc." In response, the district court granted "judgment by default in favor of the plaintiff against the absent parties." After trial on the merits, the court signed a final judgment reciting

9

appearances by the Fund and Miguel, and stating that "[a]lthough duly served with notice of this setting, Border Maintenance Services, Inc. and Linda Delgado did not appear."

An interlocutory judgment regarding Linda's liability was rendered when the court granted the default judgment. *See Leal*, 892 S.W.2d at 858. Moreover, the interlocutory default judgment became a final judgment in this case when the court signed a judgment disposing of all issues and parties to the case. *See Sultan v. Mathew*, 178 S.W.3d 747 (Tex. 2005). The final judgment also recited that Linda never appeared at the trial. Because the record is clear that a post-answer default judgment was granted, we will review her claims under *Craddock* to determine whether they are meritorious. *See Lopez*, 757 S.W.2d at 722; *Craddock*,133 S.W.2d at 126.

Generally, in order to set aside a post-answer default judgment, the defendant must prove the three factors set out in *Craddock*: (1) her nonappearance was not intentional or the result of conscious indifference; (2) a meritorious defense; and (3) a new trial would not cause delay or undue prejudice. *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (citing *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex. 1987)). If the first element is established by proof that the defaulted party was not given notice of a trial setting, we dispense with the second element for constitutional reasons. *Id.* (citing *Lopez*, 757 S.W.2d at 723). Furthermore, the Fund does not dispute that Linda has satisfied the third element. Thus, whether Linda was entitled to a new trial depends upon whether she proved the first element—that her nonappearance was not intentional or the result of conscious indifference because she never received notice of the trial. *See id.*; *see also LBL Oil Co. v. International Power Servs., Inc.*, 777 S.W.2d 390, 390-91 (Tex. 1989) (post-answer default judgment reversed when party did not receive actual or constructive notice of dispositive hearing).

10

**Notice of trial**

In her first two issues, Linda argues that the district court erred by granting the default judgment and by denying the motion for new trial because her "uncontroverted affidavits" establish that she did not receive notice of the trial setting, and, she contends, the record does not demonstrate otherwise. The Fund responds that she received constructive notice and that, in any event, Miguel was her agent and there is no dispute that Miguel received actual notice of the trial setting.[8]

As a matter of due process, a party who has entered an appearance in a contested case is entitled to forty-five days' notice of the first trial setting unless the parties have agreed otherwise. Tex. R. Civ. P. 245; *see LBL Oil Co.*, 777 S.W.2d at 390-91 (citing *Peralta*, 485 U.S. at 84). However, notice may be either actual or constructive, as long as it is reasonably calculated under the circumstances to apprise the party of the pendency of the action and afford him or her the opportunity to present objections. *See Peralta*, 485 U.S. at 84; *see also LBL Oil Co.*, 777 S.W.2d at 391; *Lopez*, 757 S.W.2d at 723. One of several methods of service of notice permitted is

> by delivering a copy of the notice to the party to be served, or the party's duly authorized agent or attorney of record, either in person or by agent or by courier receipted delivery or by certified or registered mail, to the party's last known address, or by telephonic document transfer to the recipient's current telecopier number, or by such other manner as the court in its discretion may direct. . . . A certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service. Nothing herein shall preclude any party from offering proof that the notice or instrument was not received.

---

[8] The Fund also asserts that the record demonstrates Linda's conscious indifference because she failed to affirmatively notify the court of her correct address. However, due to our finding that Linda received constructive notice, we need not reach this issue.

11

Tex. R. Civ. P. 21a.  Additionally, when the sender of a document relies on office routine or custom to support an inference that the document was mailed, the sender must provide corroborating evidence that the practice was actually carried out.  *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 928 (Tex. 1999) (citing *Texas Employers Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 92 (Tex. 1961)).

We review the denial of a motion for new trial for an abuse of discretion.  The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  A court abuses its discretion in failing to grant a new trial if all three *Craddock* elements are met.  *See Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994) (citing *Craddock*, 133 S.W.2d at 126).

Evidence that notice of trial was given appears in the record attached to Linda's motion for new trial.[9]  Notice was given in a letter dated April 17, which was addressed to "Mr. Miguel Delgado; Linda Delgado; Border Maintenance Services, Inc.; 2300 West Commerce; San Antonio, Texas 78205."  The letter stated that the case had been set for a jury trial on June 23, 2003, at 9 a.m. and on its face purports to have been faxed to the facsimile number listed in the order granting Newton's motion to withdraw.

Linda complains that the notice was addressed to 2300 West Commerce instead of 200 West Commerce, her last known address listed in the withdrawal order, that it did not specify the suite number listed in the order, and that it was not her actual address.  However, Linda's motion for new trial and the notice itself establish that notice was sent via facsimile to the number supplied

---

[9]  BMS and Miguel also joined in Linda's motion for new trial, asserting different grounds. However, they did not appeal the district court's denial of their motion.

by her attorney of record, in compliance with the withdrawal order, and that it was actually received at that location.

In the motion for new trial, the defendants asserted that "[o]n April 17, 2003, Plaintiff's attorney of record, DAVID BRENNER, faxed a letter to the attention of [] LINDA DELGADO." Miguel's affidavit, attached to the motion and incorporated "for all purposes," states that "[o]n or about April 17, 2003, I received notice for the jury trial we had in this case on June 23, 2003. I received this notice from one David Brinner [sic], although it was not directed to the address to which the Court ordered that notices to me be forwarded." The fact that the notice was not addressed to the correct physical address is not material in this case because a last known facsimile number was listed in the order, and notice of trial may be sent via facsimile. *See* Tex. R. Civ. P. 21a (notice, other than service of citation and except as otherwise provided in rules, may be served "by telephonic document transfer to the recipient's current telecopier number, or by such other manner as the court in its discretion may direct"). The notice recites the same facsimile number listed in the withdrawal order by Linda's attorney of record, and Miguel's affidavit establishes that the notice was, in fact, received.[10] Actual notice to Linda is not required; all that is required is notice reasonably calculated under the circumstances to apprise her of the pendency of the action and afford her the opportunity to present her objections. *See Peralta*, 485 U.S. at 84; *see also LBL Oil Co.*, 777 S.W.2d at 391 (default judgment reversed where party had no actual or constructive notice of dispositive hearing); *Lopez*, 757 S.W.2d at 723 (because record established lack of actual or

---

[10] Because the notice was sent and received via facsimile to the number given by her attorney of record, we need not address Linda's complaint that she had never lived at or worked at the last known address given by her attorney, or that she had never instructed anyone to forward correspondence to her at that address.

13

constructive notice of trial setting, lower courts erred in requiring party to prove meritorious defense). We find that there was sufficient proof of constructive notice to Linda that was reasonably calculated under the circumstances to apprise her of the pendency of the action and afford her the opportunity to present her objections. *See Peralta*, 485 U.S. at 84. The district court did not abuse its discretion by granting the default judgment or by denying the motion for new trial. We overrule Linda's first and second issues.

**Sufficiency of the evidence**

In her fourth issue, Linda contends that the evidence is legally and factually insufficient to support the court's finding that she and Miguel "conspired to and did use [BMS] and Del-Kleen, Inc. for the purpose of perpetrating and did intentionally perpetrate an actual fraud on the Fund primarily for the direct personal benefit of Miguel Delgado and Linda Delgado."

In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to fact determinations of the finder of fact, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Patlyek v. Brittain*, 149 S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied). More than a scintilla of evidence exists when the evidence

14

supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 183 (Tex. 1995).

In reviewing a factual insufficiency point, we consider, weigh, and examine all the evidence presented at trial. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The elements of an actionable civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) and *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Focusing on the third and fourth elements, Linda argues that she "was only nominally a part" of Del-Kleen and that "[s]he had no knowledge of and played no role in the operation of" Del-Kleen. Furthermore, she contends, no evidence was introduced which would support a conclusion that she "undertook any act or played any role in the circumstances leading to this suit." We disagree.

At trial, Miguel testified that he listed Linda as 51% owner of Del-Kleen in his application for insurance with the Fund and that she had agreed to allow him to do so in an attempt to show that Miguel was not the majority owner. Miguel also admitted that he knew that if he was a majority owner, the Fund would be entitled to premiums for both companies.

15

Linda challenges whether there was sufficient evidence that she and Miguel reached a meeting of the minds on the object or course of action or whether she committed one or more unlawful, overt acts. Miguel testified that Linda allowed her name to be placed on documents showing that she was majority owner in a shell company in an attempt to avoid payment for insurance premiums and defraud the Fund. The insurance application in evidence lists her name as president and 51% owner of Del-Kleen. These facts constitute more than a scintilla of evidence supporting a finding that Miguel and Linda reached a meeting of the minds on the object or course of action of creating Del-Kleen with the express intent of attempting to defraud the Fund of payments for both companies and that the act of allowing her name to be listed was at least one unlawful, overt act. The evidence of civil conspiracy is also not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Havner*, 953 S.W.2d at 711; *Cain*, 709 S.W.2d at 176. We hold that the evidence is legally and factually sufficient to support the judgment. We overrule Linda's fourth issue.

## CONCLUSION

Having overruled Linda's issues, we affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 17, 2006

16