# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00876-CV

**Janet Elder and Blaine Elder, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 240,093-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a jury trial, the trial court terminated the parental rights of Janet Elder to her children, J.S.R. and B.W.E., and of Blaine Elder to his child, B.W.E., and appointed the Texas Department of Family and Protective Services ("the Department") as the sole managing conservator of both children. In three issues, Janet Elder and Blaine Elder challenge the termination, contending that (1) the trial court abused its discretion by denying their motion for withdrawal and substitution of counsel, and (2) the evidence is legally and factually insufficient to support findings that termination of the parent-child relationships is in the best interests of the children.[1] We will affirm.

---

[1] Issue two challenges the termination of the parental rights of Janet Elder to J.S.R. and B.W.E. Issue three challenges the termination of the parental rights of Blaine Elder to B.W.E.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2009, the Department received a report that J.S.R. had been physically abused. The Department investigated the allegations and found what it believed to be bruises on J.S.R. resulting from a spanking with a belt. Janet[2] denied using physical discipline on the child; Blaine admitted that he spanked J.S.R. with a belt but denied causing the bruises. At the conclusion of the visit, Janet and Blaine signed a voluntary safety plan agreeing not to physically discipline J.S.R. and to complete parenting and anger management classes. In July the Department received another report that Blaine had been admitted to a detoxification program at the VA Hospital due to severe alcohol abuse and that Janet had been observed physically disciplining J.S.R. in a hospital waiting room. After an investigation, the Department opened a "family based safety services" case that identified specific concerns (Blaine's drinking, Janet's mental health issues, and physical abuse in the home) and addressed ways to alleviate the concerns. In November the Department received a third report of physical abuse and neglect of J.S.R. During the investigation, J.S.R., then almost four years old, said he had been hit but did not know by whom. Blaine stated that he had been drinking and was not attending counseling sessions. Janet and Blaine agreed to a new safety plan pursuant to which Myrna Freeman would care for J.S.R. and Janet and Blaine would move in with a friend. After Janet asked to change the placement, Janet and Blaine agreed to allow Priscilla Deem to care for J.S.R. while living in Freeman's house. While J.S.R. was living at Freeman's house and being cared for by Deem, Janet and Blaine were living with a friend, Inez Bartholomew.

---

[2] Because the appellants share the same surname, for clarity we refer to them by their given names.

Bartholomew testified that while Janet and Blaine lived with her, Janet was often yelling and crying and on one occasion threatened to hit one of Bartholomew's children with a belt. Blaine was drinking every day and was physically abusive toward Janet.

On December 2, 2009, the Department petitioned the trial court for a non-emergency removal of J.S.R. Thereafter, the court appointed the Department temporary managing conservator of J.S.R. and continued his placement, which was now court-ordered, with Deem. On December 24, 2009, Bartholomew took Janet to the hospital to deliver B.W.E., Janet and Blaine's child. After leaving Janet at the hospital, Bartholomew picked Blaine up at a local bar and brought him to the hospital. According to Bartholomew, Blaine smelled of alcohol and could barely stand up. Shortly after his birth, the Department requested a hearing and was appointed B.W.E.'s temporary managing conservator; the court ordered B.W.E. placed with Deem.

After initial objections, Janet and Blaine ultimately agreed to a service plan in January 2010. Despite the service plan's prohibition against Blaine's drinking, he continued to drink and refused to take drug tests ordered by the court. Blaine also failed to attend his relapse prevention group and anxiety group meetings at the VA Hospital. In June 2010, Blaine was admitted to the VA Hospital for detoxification from alcohol, his eighth such admission.

Janet was evaluated at Scott and White Hospital in June 2010. Janet informed the evaluating physician of her history with the Department and reported that she and Blaine had frequent fights during which they would throw each other to the floor. When the physician asked Janet if she wanted to be admitted to the hospital, she responded that she did not feel that she needed to and that hospitalization would not help her. Janet was advised how her actions had played a role

3

in having her children removed from her care and of the tangible changes she would need to make in order to have them returned to her.

In July 2010, the Department filed its "permanency plan and progress report" in which it reported that psychological evaluations concluded that neither Janet nor Blaine demonstrated the basic skills necessary to provide proper care for the children. Neither Janet nor Blaine had regularly attended individual or family counseling, and Janet stated she would not participate in counseling because the Department "would use it against her." Although Blaine had completed a VA Hospital alcohol assessment, he failed to attend any of the 15 scheduled appointments in the substance abuse treatment program and told VA Hospital staff that he was not interested in participating. During her visits with her children, Janet was observed failing to demonstrate appropriate parenting skills by yelling, crying, and having difficulty soothing B.W.E. Blaine did not attend any supervised visits after he was removed from the first one as a result of becoming irate and physically threatening the caseworker. He later admitted to police that he had several beers that morning. The report also stated that Janet did not provide any documentation to the Department regarding her attendance at psychiatric appointments for medication monitoring and that Janet had disclosed that she had a psychiatric hospitalization after not taking her medications.

The case was ultimately tried to a jury beginning November 29, 2010. The jury found by clear and convincing evidence that Janet, with respect to J.S.R. and B.W.E., and Blaine, with respect to B.W.E., had knowingly placed or knowingly allowed their children to remain in conditions or surroundings that endangered their physical or emotional well being and had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their

4

physical or emotional well being.  *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E) (West Supp. 2010).  The jury further found that Blaine had constructively abandoned B.W.E. and that Janet and Blaine had each failed to comply with provisions of a court order that specifically established the actions necessary for return of the children to them.  *See id.* § 161.001(1)(N), (O).  The jury found that termination of the parent-child relationships was in the best interests of the children. *See id.* § 161.001(2).  By clear and convincing evidence, the jury found that the parent-child relationships between Janet and J.S.R. and B.W.E. should be terminated.  The jury also found by clear and convincing evidence that the parent-child relationship between Blaine and B.W.E. should be terminated.  Thereafter the trial court signed a decree of termination, and this appeal followed.

## DISCUSSION

In their first issue, Janet and Blaine contend that the trial court abused its discretion in denying their motion to withdraw their court-appointed attorney and to substitute a different appointed attorney in his place.[3]  At a final pretrial hearing held on November 29—immediately before trial was to begin—Janet's and Blaine's court-appointed attorney informed the court that he had a motion for the court's consideration and stated, "My clients wish to move for the—I be relieved from my assignment in this case and discharged, and that Mike White, an attorney in the state of Texas, [C]ounty of Bell, be appointed in my stead.  I have not spoken to Mike, but I have spoken to my clients."  Mike White was not in the courtroom.  After some discussion with Janet and

---

[3]  When the Department filed its original petition, Janet and Blaine requested that the court appoint an attorney to represent them.  *See* Tex. Fam. Code Ann. § 107.013(a)(1) (West 2008) (in suit filed by governmental entity in which termination of parent-child relationship is requested, court shall appoint attorney ad litem to represent interests of indigent parent who opposes termination).

5

Blaine and a short recess, the trial court denied the motion to withdraw and further stated: "I don't really have a motion to substitute right now. I've got no other lawyer here. I've only got you. I'm sorry to make it—to have to go to trial at this particular point, but its been a year and we have a drop-dead dismissal date on the 2nd [of December], and so your request for—motion to withdraw and your request to substitute is denied." Janet and Blaine argue that this denial was an abuse of discretion and compelled them to go to trial without counsel of their own choosing.

We review the court's decision to deny a motion to withdraw for an abuse of discretion. *See Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.—Dallas 2001, pet. denied). The decision to grant or deny a request for substitution of counsel is also a matter within the discretion of the trial court. *See Spinks v. Brown*, 103 S.W.3d 452, 459 (Tex. App.—San Antonio 2002, pet. denied). A motion to withdraw must comply with rule 10 of the Texas Rules of Civil Procedure which states that an attorney may withdraw from a case "only upon written motion for good cause shown." Tex. R. Civ. P. 10; *see Gillie*, 65 S.W.3d at 221. A court does not abuse its discretion when it denies a motion to withdraw that does not comply with the mandatory requirements of rule 10. *Gillie*, 65 S.W.3d at 221. In the present case, there was no written motion to withdraw filed with the court until after judgment was rendered. And there was no showing of good cause for the withdrawal. Although Blaine stated that their court-appointed counsel had "just told us to relinquish the boys," counsel denied having said that. Because the motion to withdraw did not comply with rule 10, the trial court did not abuse its discretion in denying it. *See* Tex. R. Civ. P. 10. Similarly, if another attorney is to be substituted as attorney for the party, a written motion must be filed stating several things, including the name, address, and telephone number of the substitute attorney, that the

6

party approves the substitute attorney, and that the withdrawal is not sought for delay only. *Id.* No such written motion was filed, and the proposed substituting attorney was not present in the courtroom. Moreover, the parties did not state, orally or in writing, that the substitution was not sought for delay. In fact, given that a dismissal date was approaching, it would not have been unreasonable for the trial court to have concluded that the request for substitution was in order to delay the proceedings and obtain a dismissal. Because the motion to substitute counsel did not comply with rule 10, the trial court did not abuse its discretion in denying it. Tex. R. Civ. P. 10.

With regard to their contention that they were compelled to go to trial without counsel of their own choosing, Janet and Blaine cite no case law supporting the proposition that in termination proceedings initiated by the Department an indigent parent has a right to counsel *of his or her choice.* The cases they do cite discuss a party's right to be represented in court by *retained* counsel of his or her choice. *See Keller Indus., Inc. v. Blanton*, 804 S.W.2d 182, 184 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding) ("Relator, a foreign corporation, desired to have two Illinois attorneys [] represent it as co-counsel."); *In re El Paso Healthcare Sys., Ltd.*, 225 S.W.3d 146, 155-56 (Tex. App.—El Paso 2005, orig. proceeding) (appointment of local counsel was abuse of discretion where party was represented by duly licensed attorney in good standing). Even in the context of retained counsel, though, courts recognize that a party's right to counsel of choice is not absolute. *Keller Indus., Inc.*, 804 S.W.2d at 185 (holding that right to counsel of party's choosing yields to compelling reason for denying substitution of counsel). Although we have found no cases discussing the issue in the parental-rights context, in the criminal context it is well established that an indigent defendant does not have a right to a court-appointed counsel of his or

her own choosing. *See Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex. Crim. App. 1992) (indigent defendant does not have right to counsel of his own choosing); *Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991) ("A criminal defendant is not entitled to appointed counsel of choice."). As the Department points out, the supreme court has looked to well-established criminal jurisprudence as a guide when deciding questions that arise frequently in the criminal context but have only recently become part of parental-rights jurisprudence. *See, e.g.*, *In re M.S., E.S., D.S., S.S., & N.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003) (adopting *Strickland v. Washington* standard used in criminal cases when reviewing complaints of ineffective assistance of counsel in parental-rights cases). We agree that the conclusion that an indigent criminal defendant has no right to appointed counsel of his or her own choosing applies equally in the parental-rights context. We overrule the first appellate issue.

In their second and third issues, Janet and Blaine raise legal and factual sufficiency challenges to the trial court's finding that termination of their parent-child relationships was in the best interests of the children. The termination of parental rights is a matter that implicates fundamental constitutional rights. *See In re S.N.*, 287 S.W.3d 183, 186 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that (1) a parent committed one or more of the statutory child-endangering acts or omissions in family code section 161.001(1); and (2) termination is in the best interest of the child. *See* Tex. Fam. Code Ann. §§ 161.001(1), (2). Here, the jury made affirmative findings as to the two elements required for termination with respect to both Janet Elder and Blaine

8

Elder.  In this appeal, the Elders challenge only the findings that termination was in the best interests of the children.

"Clear and convincing evidence" is the measure of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  *Id.* § 101.007 (West 2008); *see Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 615 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  On appeal, we apply a standard of review that reflects this burden of proof.  *In re J.F.C.*, 96 S.W.3d 256, 264-66 (Tex. 2002).  In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof.  *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 265-66.  We do not, however, disregard undisputed evidence that does not support the finding.  *In re J.F.C.*, 96 S.W.3d at 266.  In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.  *Id.* (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)).  We must consider the disputed evidence and determine whether a reasonable factfinder could have reasonably resolved that evidence in favor of the finding.  *Id.*  If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient.  *Id.*

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship.  *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per

9

curiam). The focus is on the best interest of the child, not the best interest of the parent. *See Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). However, parental rights may not be terminated merely because a child might be better off living elsewhere. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The factfinder may consider a number of factors in determining the best interest of the child, including: the desires of the child, the present and future physical and emotional needs of the child, the present and future emotional and physical danger to the child, the parental abilities of the person seeking custody, programs available to assist those persons in promoting the best interest of the child, plans for the child by those individuals, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *See In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

In the present case, the jury heard testimony from Janet that she suffers from bipolar disorder, that she often fails to take her medication which has resulted in hospitalization, and that she has refused treatment. There was evidence of a long history of domestic violence between Janet and Blaine as well as a long history with the Department. Although Blaine has sought treatment

10

several times for alcohol intoxication and has attended some Narcotics Anonymous meetings, he continued to drink until one month before trial. Janet told a Department investigator that Blaine would spend what little money they had on alcohol, behavior that Janet was unable to stop.

Veronica Lopez, a Department investigator, testified regarding parenting services that had been provided to both Janet and Blaine. Although Janet and Blaine participated in the services at the beginning, they began missing appointments with various excuses, including that they were out of town, Blaine had a spider bite, and the fish tank exploded overnight and they were tired. Janet and Blaine did not complete the parenting classes. The Department, with input from the Elders, created a service plan with identified tasks and goals for the family. The service plan focused on Blaine's issues with alcohol, Janet's mental health issues, and the couple's history of domestic violence. Among other things, the plan called for (1) Janet and Blaine to remain drug free and free of violence and health and safety hazards in the home, (2) Blaine to complete a drug and alcohol assessment and follow any recommendations arising out of the assessment, and (3) Janet to follow up on mental health treatment as permitted by her pregnancy with B.W.E.[4] J.S.R. was also to receive counseling sessions. The jury heard testimony that Blaine never completed the prescribed drug and alcohol assessment. The week before the scheduled assessment, Blaine was admitted to the VA hospital for a detoxification program after binge drinking. Thereafter he did not reschedule the drug and alcohol assessment. Lopez testified that Janet's and Blaine's participation in the services offered was "almost nonexistent" and they did not appear to have gained any insight and had not altered their behavior at all.

---

[4] Janet was unable to take some of her medications during her pregnancy.

Lore Alvarez, a human service technician in Family Based Safety Services, testified that during supervised visits with J.S.R., Janet and Blaine did not interact with the child or ask how he was doing but instead sat on the couch watching him play with toys and sending text messages to each other. The next time Alvarez picked them up to take them to visit J.S.R., Blaine was stumbling and smelled like alcohol. Blaine claimed to have fallen the night before and was concerned that he might have a concussion, so rather than take him to visit J.S.R., Alvarez dropped him off at the VA Hospital. Janet then stated to Alvarez that Blaine had spent all their money on beer, and that although her family urged her to leave him, she was determined to make their marriage work. During the visit with J.S.R., Janet played with him for a bit, but mainly sat on the couch watching him, and twice appeared to attempt to talk to someone who was not there.

The jury also heard testimony from Dr. Timothy Daheim, a licensed psychologist assigned to the case by the Department for the purpose of conducting psychological evaluations on both Janet and Blaine. Daheim recounted instances in which Janet appeared to be delusional and expressed his belief that she did not appear to be grounded in reality. He testified to a concern that Janet was not receiving medication for paranoia or delusional thought processes and stated that Janet did not demonstrate an ability to protect her children or provide a caring and nurturing environment. He also noted her apparent failure to recognize abusive behaviors, which he attributed to her own history of abuse, stress, and untreated mental health issues.

The jury heard testimony from Janet wherein she admitted that she needed to be under the care of a psychiatrist, but that she had no access to psychiatric treatment after she was removed from the Medicaid program. She stated that she was not able to get the medications she needed,

12

which she also attributed to the fact that her Medicaid was suspended when her children were removed by the Department. She expressed her belief that the Department was untruthful and that all of the supporting witnesses were also untruthful or had some financial reason to act against her interests. She also expressed a negative view of J.S.R. and B.W.E.'s foster parents and accused them of abusing J.S.R. Janet did acknowledge that Blaine had a drinking problem, but stated that he was dealing with it and had been "fine" for the last three months.

The evidence at trial supported the view that Janet and Blaine's pattern of poor parenting, domestic violence, failure to participate in services offered by the Department, and Blaine's alcohol abuse continued without improvement during the pendency of the case. The jury also heard testimony regarding Janet's mental health issues, which often went untreated. The Department presented evidence regarding its plan for the children, which was adoption by the foster parents with whom the children had lived since April 2010. Yetsenia Rojas, a conservatorship worker employed by the Department, testified that the children had bonded with the foster parents, who provided them with a stable, loving home, and that J.S.R. calls his foster parents "mom" and "dad." Cynthia Richard Galvan, a Department employee specializing in family service plans, child plans, and conservatorship, testified that in foster care J.S.R. had made significant gains in his motor skills and speech. Michael Lockett, the children's guardian ad litem, also stated his recommendation that the children remain with the foster parents.

Viewing the evidence in the light most favorable to the factfinder, we conclude that the jury could reasonably have found that the facts presented provided clear and convincing evidence that Janet and Blaine were unable to provide for the children's emotional needs and that their

13

conduct created an emotional danger to the children, both now and in the future. The same facts could provide clear and convincing evidence to the jury that Janet and Blaine lacked the parenting abilities to enable them to retain parental rights of the children. These, along with other of the *Holley* factors, provided the jury with sufficient evidence that termination of Janet's and Blaine's parental rights was in the best interests of J.S.R. and B.W.E. Applying the appropriate standards of review, we conclude that the evidence is legally and factually sufficient to support a finding that termination was in the best interests of J.S.R. and B.W.E. We overrule the second and third appellate issues.

## CONCLUSION

Having overruled Janet and Blaine's three appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: September 20, 2011

14