Thomas M. SIMS, Raymond J. Campbell, Supernova Financial Services Corporation, Supernova Investments, Inc., and Daniel Joseph Shea, Appellants,

v.

Patricia Hill FITZPATRICK and Richard Grayson Guion, Appellees.

No. 01–07–00868–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 26, 2009.

Rehearing Overruled April 30, 2009.

---

Daniel J. Shea, Daniel J. Shea, P.C., Houston, TX, for Appellants.

Elizabeth M. Bruman, Law Office of Elizabeth Bruman, P.C., Houston, TX, Joshua S. Clover, Betts, Clover & Walters, P.C., Brenham, TX, for Appellees.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

TERRY JENNINGS, Justice.

Appellants, Thomas M. Sims, Raymond J. Campbell, Supernova Financial Services Corporation, Supernova Investments, Inc., and Daniel Joseph Shea, challenge the tri-al court's judgment in favor of appellees, Patricia Hill Fitzpatrick and Richard Grayson Guion, and the trial court's post-judgment order imposing sanctions against appellants. Appellants present six issues for our review. They contend that the trial court erred in allowing their previous attorneys to withdraw from representing them, "striking a timely jury demand," not granting a new trial "when the evidence was uncontroverted that [they] were enti-tled to a new trial," and "imposing sua sponte sanctions without giving notice or the opportunity to be heard." Appellants also contend that the "assigned judges abuse[d] their discretion in failing to re-cuse and/or disqualify the [trial] court" and the trial court's "order sanctioning [them] and their counsel [is] void as a matter of law as the motion for new trial was over-ruled by operation of law and no timely post-judgment motion for sanctions was on file."

We affirm in part and reverse and re-mand in part.

## Factual and Procedural Background

In March 2006, Fitzpatrick and Guion filed separate suits against appellants, as-serting claims of fraud, breach of fiduciary duty, and breach of contract. After Fitz-patrick's and Guion's suits were consolidat-ed in December 2006, the trial court, on April 20, 2007, entered a docket control order, setting the consolidated case for trial on November 5, 2007. On May 4, 2007, Fitzpatrick and Guion filed their sev-enth amended petition, the live pleading in this case.[1]

On July 19, 2007, appellants' counsel, R. Scott Wolfrom and Tom Fillion, filed a motion to withdraw, asserting that good

---

1. In the trial court, appellants "objected" to the omission of Fitzpatrick from this petition, noting that the only plaintiff identified in the petition was Guion. Appellants do not raise this complaint on appeal.

cause existed to withdraw as they had developed an incurable "conflict of interest" in continuing to represent appellants and that it was "impossible for counsel to effectively communicate and provide legal advice and representation" to appellants. In their motion, Wolfrom and Fillion stated that they had advised appellants in writing of the conflict and the filing of the motion, it was not known if appellants consented or objected to the motion, appellants had been advised of their right to object to the motion, appellants had been "given notice of the filing of [the] motion at their last known address," there were "no pending deadlines as of the filing of [the] motion," the matter had been set for trial on November 9, 2007, and appellants had been advised to retain separate attorneys for the corporate appellants. On August 21, 2007, the trial court granted the motion to withdraw and ordered that the corporate appellants have a new attorney file a notice of appearance by September 13, 2007. The trial court further ordered that Wolfrom and Fillion mail a copy of its order by certified mail to appellants' last known addresses.

Guion, on September 10, 2007, filed his motion for death penalty sanctions, and, on September 14, 2007, Fitzpatrick filed her motion for death penalty sanctions. In their motions, Guion and Fitzpatrick alleged that appellants had resisted their discovery attempts, appellants had refused to comply "with numerous" court orders compelling discovery, and Guion had already moved for and obtained monetary and discovery sanctions related to appellants' discovery abuse. Fitzpatrick and Guion further complained that they had attempted to depose various individual defendants, including Campbell, and that

Campbell had delayed by having his counsel withdraw. Fitzpatrick noted that the trial court had previously ordered appellants to respond to discovery, imposed monetary sanctions related to appellants' refusal to respond to discovery, and prohibited appellants from conducting their own discovery as a sanction for discovery abuse. In support of her motion, Fitzpatrick attached an affidavit from Guion's counsel, in which he testified that appellants had intentionally and repeatedly abused the discovery process, filed bankruptcy proceedings to stall discovery, filed frivolous objections to discovery, and had never complied with prior discovery orders. Guion's counsel attached to his motion the trial court's prior discovery orders dated February 16, 2007, March 23, 2007, and July 12, 2007.

On September 14 and September 25, 2007, the trial court granted Guion's and Fitzpatrick's motion for death penalty sanctions, striking appellants' pleadings for their abuse of the discovery process and entering judgment as to liability in Fitzpatrick's and Guion's favor. On September 24, 2007, more than 30 days before trial, appellants served their jury demand on Fitzpatrick and Guion. The jury demand was received and file-stamped by the clerk on September 25, 2007. Also on September 25, 2007, after the trial court entered judgment in favor of Fitzpatrick, it set a hearing on damages for October 3, 2007. Guion, on September 25, 2007, then served appellants with a notice of the October 3, 2007 damages hearing.[2]

Appellants, on September 28, 2007, filed a verified motion for continuance, seeking to continue the October 3, 2007 damages hearing to November 5, 2007, the date the case had been previously set for trial. As

---

**2.** The notice only referenced Guion. The parties do not cite to any notice provided by Fitzpatrick.

noted by appellants, this had been the "original setting" in place before the trial court unilaterally advanced the damages hearing date. Appellants noted that they had made a written demand for a jury trial, and they asserted that they needed a continuance so that their new counsel could consult with them and prepare for trial. In support of their motion, appellants attached an affidavit from their new counsel, Shea, in which Shea testified that he had been retained on September 17, 2007 and that another attorney who had been retained by appellants to appear on September 14, 2007 had failed to do so. Shea further testified that he had been able to conduct "a limited review" of the case file, the case file from prior counsel was in disarray, the case had a complex history, and he needed 90 days to adequately prepare.

On October 3, 2007, the trial court denied appellants' motion for continuance, ruled that appellants' jury demand was untimely, and conducted a bench trial on damages. On October 11, 2007, the trial court entered a "final judgment" and awarded as damages $425,000 to Guion and $888,000 to Fitzpatrick, plus interest.

Appellants, on November 9, 2007, filed a new trial motion, in which they argued that their timely jury demand had been denied, they had been denied due process, the trial court had granted excessive sanctions against them, the trial court had not complied with Texas Rule of Civil Procedure 10 in allowing their prior counsel to withdraw, and the trial court erred in denying their motion for continuance. Appellants set their new trial motion for hearing on December 21, 2007. Appellants attached to their new trial motion the affidavit of Campbell, in which he testified

that the facts set forth in the motion were true and correct.

At a hearing on November 16, 2007, the trial court reset the new trial motion hearing to November 30, 2007. Appellants then filed a "verified motion for continuance," seeking to again return the new trial motion hearing to December 21, 2007. Appellants attached the affidavits of Sims, Campbell, and Shea. Sims and Campbell testified that they had previously committed to appear on December 21, 2007 to offer evidence in support of the new trial motion and that they could not appear on November 30, 2007. Shea also testified that he could not adequately prepare for an evidentiary hearing scheduled for November 30, 2007.

On November 21, 2007, at a hearing on appellants' motion for continuance, the trial court warned Shea that if appellants did not appear to offer testimony in support of their new trial motion, the trial court would hold it against both Shea and appellants. Shea represented that his clients would appear to testify that their prior lawyers did not comply with Texas Rule of Civil Procedure 10 in withdrawing and that their prior counsel caused the discovery problems. The trial court granted the continuance, but repeated its warnings that Shea would face monetary sanctions if appellants failed to appear at the requested evidentiary new trial hearing.

Despite the trial court's warnings, at the new trial hearing on December 14, 2007,[3] appellants passed the evidentiary hearing on their new trial motion. After the trial court denied the new trial motion, Fitzpatrick and Guion then explained to the trial court that, in preparation for appellants' requested evidentiary hearing, they

---

**3.** The parties do not explain why this hearing occurred on December 14, 2007 rather than December 21, 2007.

had subpoenaed appellants' prior trial counsel and had expended time in preparing for the hearing. Fitzpatrick and Guion argued that sanctions were appropriate to account for their time and the time of appellants' prior trial counsel. Wolfrom and Fillion, appellants' prior counsel, who were in the courtroom, represented that they had spent ten hours and five and one-half hours respectively preparing for the hearing. Derrick Saulsberry, another lawyer who had been subpoenaed to appear at the hearing, testified that he spent approximately two hours preparing for the hearing. After finding that Fillion, Wolfrom, and Saulsberry "probably charge[d] $200 or $300 an hour," the trial court ruled that appellants and Shea should be jointly and severally liable for sanctions to Saulsberry for $200, Fillion for $550, and Wolfrom for $1,000. On December 20, 2007, Fitzpatrick and Guion filed a joint motion for sanctions, repeating their assertions that appellants' efforts to obtain an evidentiary hearing on their new trial motion had been a "preconceived plan to cause delay and subterfuge." Fitzpatrick and Guion requested that Shea and appellants be ordered to pay them $3,360 and $5,583 respectively for attorney's fees and costs expended in preparing for the evidentiary hearing, and they attached affidavits from their counsel to support these amounts. Wolfrom and Fillion also attached affidavits stating that they had been subpoenaed to appear at the hearing, they had not engaged in any conduct warranting discovery sanctions, and appellants had been notified of obligations relating to discovery and their withdrawal. Wolfrom testified that he spent ten hours preparing for the hearing and his hourly rate was $250. Fillion testified that he spent five hours preparing for the hearing and his hourly rate was $250. Saulsberry also testified he had been subpoenaed to appear at the hearing on the new trial motion, he

never represented appellants, he spent two hours preparing for the hearing, and his hourly rate was $250.

The trial court, on December 26, 2007, entered an "order denying [appellants'] motion for new trial and imposing sanctions for wasted attorney witnesses time." The trial court stated that "[b]ecause [appellants] represented to the court and to opposing counsel that [they] would give testimony implicating their previous attorneys in malpractice and because [appellants'] motion for new trial was based in large part on alleged deficiencies in prior counsel's representation, three attorneys who formerly represented [appellants] were subpoenaed to testify in response to the alleged expected testimony of [appellants]." The trial court further stated that appellants failed to appear in person at the new trial hearing, no testimony was offered, appellants' new trial motion was denied, and appellants and their attorney Shea were sanctioned "for wasting the time of the subpoenaed witnesses, [ ] delaying the proceedings in this matter," and "falsely representing that [appellants] must and would appear and testify." The trial court imposed monetary sanctions in the amounts requested at the hearing.

Then, on January 11, 2008, the trial court signed an amended "order on plaintiffs' joint motion for sanctions." In this order, the trial court stated that the conduct of appellants and Shea "relating to the motion for continuance ..., the request for evidentiary hearing, and the representations made by [appellants and Shea] constitute egregious conduct and [ ] an abuse of the judicial process." The court further stated that Shea's and appellants' representations regarding the evidentiary hearing were false when made or proved no longer true when Shea and appellants decided not to proceed with the hearing and that Shea and appellants had

failed to notify the trial court once they made the decision to pass on an evidentiary hearing. The trial court found that appellants' and Shea's failure to file a list of witnesses and areas of testimony for the evidentiary hearing, as ordered by the trial court, and to subpoena witnesses for the evidentiary hearing proved that they never intended to proceed with the evidentiary hearing. The trial court further found that appellants' and Shea's conduct interfered with the "core functions of the Court," was "an attempt to delay the finality of the judgment," and was done "in bad faith [ ] to obstruct and interfere with the judicial process." The trial court also stated that Shea and appellants were warned on November 21, 2007 that they would face monetary sanctions if they did not go forward with their requested evidentiary hearing. The court awarded Fitzpatrick and Guion, as sanctions, their requested attorney's fees and awarded, as sanctions, $2,000 to Wolfrom, $1,000 to Fillion, and $400 to Saulsberry, all to be paid jointly and severally by Shea and appellants.

### Motion to Withdraw

█ In their third issue, appellants argue that the trial court abused its discretion in allowing their prior counsel, Fillion and Wolfrom, to withdraw from representing appellants because Fillion and Wolfrom's motion to withdraw failed to comply with Texas Rule of Civil Procedure 10, and, thus, they "were unaware that a motion to strike their pleadings based on discovery abuse ha[d] been filed and was about to be heard."

█ We review the granting of a motion to withdraw for an abuse of discretion. *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.-Dallas 2001, pet. denied). A court abuses its discretion when it grants a motion to withdraw that does not comply with the mandatory requirements of rule 10.

*Id.* However, "such error may be harmless if the court allows the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Id.* (citing *Walton v. Canon, Short & Gaston,* 23 S.W.3d 143, 149 (Tex.App.-El Paso 2000, no pet.)).

An attorney may withdraw from representing a party only upon written motion for good cause shown. TEX.R. CIV. P. 10. If another attorney will not be substituted, the motion must state "that a copy of the motion has been delivered to the party; that the party has been notified in writing of his right to object to the motion; whether the party consents to the motion; and the party's last known address and all pending settings and deadlines." *Id.* (emphasis added). If the motion is granted, the withdrawing attorney shall immediately notify the party in writing of any additional settings or deadlines of which the attorney has knowledge at the time of the withdrawal and has not already notified the party. *Id.*

Although appellants do not identify any specific deficiency in the July 19, 2007 motion to withdraw, our review of it reveals that Wolfrom and Fillion stated that they had advised appellants in writing of the conflict and the filing of the motion, they did not know if appellants consented or objected to the motion, appellants had been advised of their right to object to the motion, appellants had been "given notice of the filing of [the] motion at their last known address," there were "no pending deadlines as of the filing of [the] motion," the matter had been set for trial on November 9, 2007, and appellants had been advised to retain separate attorneys for the corporate appellants. The motion identified the addresses of each of the appellants, with Sims and the two Supernova defendants sharing the same address. The filing letter accompanying the motion,

which is included in the record, also evidences that a copy of the motion was served on Sims and Campbell. Thus, the motion met the mandatory requirements of rule 10.[4] Moreover, as Fitzpatrick and Guion note, there is nothing in the record to substantiate appellants' complaints that, at the time the motion to withdraw was filed, Fitzpatrick or Guion had already filed a motion seeking death penalty sanctions and that such a motion had already been set for hearing. Accordingly, we hold that the trial court did not abuse its discretion in granting the motion to withdraw.

We overrule appellants' third issue.

### Recusal

In their sixth issue, appellants contend that the "assigned judges abuse[d] their discretion in failing to recuse and/or disqualify the [trial] court." Appellants cite a "policy fostered by Harris County" that prohibits judges from testifying when subpoenaed. Appellants ask this Court to "once and for all decide" that "a judge, when properly summoned, must testify subject to all proper objections which are to be made on a question-by-question basis."

We review the assigned judges' rulings on the recusal motions for an abuse of discretion. Tex.R. Civ. P. 18a(f). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or acted arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■■■ First, we note that there is nothing in the record to substantiate the policy complained of by appellants. Second, although the transcript from the recusal hearings evidences that motions to quash subpoenas of the trial court judge were filed, and granted, by the judges assigned to hear the motions to recuse, these motions are not included in the clerk's record. Third, appellants offered no evidence in support of their motions to recuse. Although appellants refer to two bills of exception in their appellate briefing, appellants do not cite or discuss any evidence presented in these bills. Appellants also do not explain how any specific piece of evidence presented in these bills establish that the assigned judges abused their discretion in quashing the subpoenas or denying the recusal motions. Rather, appellants generally assert that the bills establish that the trial judge "long ago made up her mind as to who was going to win the case and that the decision was extra-judicial in nature." We conclude that appellants' sixth issue is inadequately

---

4. In a footnote, appellants suggest that the trial court clerk may not have forwarded the order and required notices to appellants. On August 21, 2007, the trial court signed an order granting the motion to withdraw and ordering that the corporate appellants have a new attorney file a notice of appearance by September 13, 2007. The trial court further ordered that Wolfrom and Fillion mail a copy of the order by certified mail to appellants' last known addresses. There is nothing in the record to substantiate appellants' suggestion, and we will not find an abuse of discretion based upon appellants' mere suggestion that the trial court did not provide them with the proper notices. Appellants, in the factual background section of their brief, also make the following assertion: "Interestingly enough, there is no mention of outstanding deadlines relating to the district court's prior discovery orders...." However, appellants cite no authority for the proposition that the previously passed deadlines of these prior orders would qualify as "pending" deadlines under rule 10, and we decline to hold that the prior deadlines contained in these orders were "pending" deadlines. In fact, appellants made no allegation or showing that they were not notified of the trial court's prior discovery orders.

briefed and presents nothing for review.[5] *See* Tex.R.App. P. 38.1(h).

We overrule appellants' sixth issue.

## Jury Demand

■ In their second issue, appellants argue that the trial court abused its discretion "in striking a timely jury demand" because they "had not defaulted but had made an appearance and timely requested a jury and paid the jury fee."

■ We review a trial court's denial of a jury demand for an abuse of discretion. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996). In conducting an abuse of discretion review, we examine the entire record. *Id.* We will find an abuse of discretion only when the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*

■ The Texas Constitution guarantees the right to trial by jury. *See* Tex. Const. art. I, § 15. In order to be entitled to a trial by jury, a party must file a written request for a jury trial and pay a jury fee a reasonable time before trial. Tex. Const. art. V, § 10 (stating that "no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature"). Moreover, a party may not have a jury trial in any civil suit "unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, *but not less than thirty days in advance.*" Tex.R. Civ. P. 216 (emphasis added). A request for a jury trial made in advance of the thirty-day deadline is presumed to have been made at a reasonable time before trial. *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex.1991); *In re J.N.F.*, 116 S.W.3d 426, 436 (Tex.App.-Houston [14th Dist.] 2003, no pet.). A party may rebut that presumption by showing that the granting of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the handling of the court's business. *Halsell*, 810 S.W.2d at 371. The refusal to grant a timely requested jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified. *Id.* at 372 (citing *Olson v. Tex. Commerce Bank*, 715 S.W.2d 764, 767 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.)); *see also Caldwell v. Barnes*, 154 S.W.3d 93 (Tex.2004) ("The wrongful denial of a jury trial is harmful when the case contains a question of material fact.").

On April 10, 2007, the trial court signed its docket control order, setting the case for trial on November 5, 2007. On September 24, 2007, more than 30 days before trial, appellants served their jury demand on Fitzpatrick and Guion. This jury demand was received and file-stamped by the clerk on September 25, 2007. On September 14 and 25, 2007, the trial court entered

---

5. Had appellants preserved their general complaint that the assigned judges erred in quashing the subpoenas issued to the trial judge, appellants still were required to show extraordinary circumstances to justify compelling the trial judge to testify regarding her mental processes in arriving at her decisions. *Tate v. State*, 834 S.W.2d 566, 569–70 (Tex. App.-Houston [1st Dist.] 1992, pet. ref'd); *Thomas v. Walker*, 860 S.W.2d 579, 582 (Tex. App.-Waco 1993, no writ). Here, appellants presented no evidence at the recusal hearings. In their "bill of exceptions," appellants' referred to statements made by the trial judge during various hearings. Thus, appellants failed to make a threshold showing of improper conduct on the part of the trial judge that would have justified compelling her to testify. *Tate*, 834 S.W.2d at 569–70.

judgment as to liability in favor of Guion and Fitzpatrick and imposed death penalty sanctions against appellants. After entering the liability judgments, the trial court then set a hearing on damages on October 3, 2007, effectively moving up the final trial date from November 5, 2007 to October 3, 2007. Guion, on that same day, served appellants' with notice of the hearing on damages.

Here, appellants served and filed their jury demand more than thirty days before the November 5, 2007 trial date. Fitzpatrick and Guion have not made any argument or cited anything in the record to support a finding that granting appellants a jury trial, even if limited solely to damages, would have operated to injure them, disrupted the court's docket, or impeded the ordinary handling of the court's business. The parties have not furnished this Court with a copy of any transcript explaining why the trial court advanced the damages hearing date to October 3, 2007. The trial court's only statement on the record before us as to why it denied appellants' request for a jury was that it considered appellants' request untimely. But, as noted above, the request is presumed timely, and nothing in the record defeats this presumption. We recognize that, here, the trial court granted death penalty sanctions against appellants and entered judgments as to liability in favor of Guion on September 14, 2007 and Fitzpatrick on September 25, 2007. But the parties have not cited any authority indicating that these procedural developments somehow rendered appellants' timely jury demand untimely. We conclude that appellants were entitled to rely on their jury demand in order to at least obtain a jury trial on damages.[6] *See* TEX.R. CIV. P. 243 ("If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket."); *see also In re A.S.*, 241 S.W.3d 661, 665 (Tex.App.-Texarkana 2007, no pet.) (concluding that defendant who defaulted by virtue of death penalty sanctions in family law case was still entitled to rely on jury demand and have jury trial on remaining fact questions when demand was not struck); *Marr v. Marr*, 905 S.W.2d 331, 333–34 (Tex.App.-Waco 1995, no writ) (stating that "Rule 243 recognizes, first, the importance of a party's right to a trial by jury, and, second, that the determination of the amount of damages is a question primarily for the jury" and that rule 243 "assures defaulting defendants, provided they properly request and do not waive a trial by jury, that they will be afforded their right to have a jury weigh the facts underlying the plaintiff's complaint for unliquidated damages and ascertain from those facts the amount of their damages"); *Illinois Employers Ins. Co. of Wausau v. Lewis*, 582 S.W.2d 242, 245–46 (Tex.Civ. App.-Beaumont 1979, writ ref'd n.r.e.) (concluding that trial court was not authorized to remove case from jury docket when plaintiff had previously demanded and paid jury fee, plaintiff subsequently sought to withdraw case from jury docket, defendant that had defaulted as to liability as a result of discovery sanctions had objected to

6. Even the trial court agreed at the October 3, 2007 hearing that appellants would still have been entitled to a jury trial on damages, after it entered the death penalty sanctions, if appellants had "timely" filed a jury demand. As stated above, we conclude that appellants' jury demand, which was served and filed more than thirty days before the trial setting, and which was served on the day preceding and filed on the day of the trial court's resetting of the damages hearing, was timely.

withdrawal of case from jury docket, and defendant had demanded jury trial on issue of damages); *W. Union Tel. Co. v. Skinner*, 60 Tex.Civ.App. 477, 128 S.W. 715, 716 (1910) (emphasis added) (stating that effect of default judgment deprived appellant privilege of filing answer and that appellant "would be entitled to no privilege thereafter *except to demand a jury for a trial* on the facts as to damages"). Accordingly, we hold that the trial court abused its discretion in denying appellants' jury demand.

 We now must consider whether the trial court's error was harmless. At the October 3, 2007 damages hearing, appellants sought a continuance, stating that they had received insufficient notice of the hearing date and that, because they had filed a jury demand, they were entitled to proceed before a jury on damages. After the trial court overruled appellants' motion, Fitzpatrick and Guion testified in support of their requested damages figures. Appellants' only involvement in the damages hearing was to argue to the trial court that it was not prepared to address the damages evidence presented by Fitzpatrick and Guion. We conclude that the evidence on damages presented issues of material fact, and, thus, the trial court's error in denying appellants' jury demand was not harmless.

We sustain appellants' second issue.

### New Trial

 In their first issue, appellants contend that the trial court abused its discretion in "failing to grant a new trial when the evidence was uncontroverted that [they] were entitled to a new trial." Ap-

pellants do not provide a specific record reference in support of this issue. Rather, they globally assert that their "motion incorporated all the points of error raised thus far in this brief." Appellants also vaguely assert that "the most compelling argument supported by evidence was the imposition of the death penalty sanctions and how these were excessive." However, appellants do not point to or discuss any evidence or cite to any relevant authorities in support of this argument. Accordingly, we hold that appellants' first issue is inadequately briefed and presents nothing for review. *See* TEX.R.APP. P. 38.1(h).

We overrule appellants' first issue.[7]

### Sanctions

In their fourth and fifth issues, appellants argue that the trial court's "order sanctioning [them] and their counsel [is] void as a matter of law" because "the motion for new trial was overruled by operation of law and no timely post-judgment motion for sanctions was on file" and the trial court abused its discretion in "imposing sua sponte sanctions without giving notice or the opportunity to be heard." Appellants further assert that no other timely post-judgment motions were filed within the thirty day period following the final judgment and, thus, the trial court did not have jurisdiction to enter sanctions. Appellants further assert that a new trial motion may be filed solely to extend appellate deadlines, it was Shea's choice to put on evidence, and the trial court was required to conduct an evidentiary hearing and provide notice before imposing sanctions.

---

7. Although we have held that appellants have inadequately briefed their first issue, we note that, based on our prior holding that the trial court erred in denying appellants' jury demand as to damages, and based upon the fact that appellants have not presented any direct challenge to the death penalty sanctions, appellants, upon remand, will be entitled a new trial on damages only and the death penalty sanctions as to liability will remain in place.

In reviewing the trial court's sanction orders, we "must independently review the entire record to determine whether the trial court abused its discretion." *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.2006).

Here, it is undisputed that appellants timely filed their new trial motion on October 11, 2007. *See* TEX.R. CIV. P. 329b(a). Because December 25, 2007, Christmas Day, was the seventy-fifth day after the date the judgment was signed, the trial court timely signed its first order denying appellants' new trial motion and "imposing sanctions for wasted attorney's time" on December 26, 2007. *See* TEX.R. CIV. P. 4 (providing that "[i]n computing any period of time prescribed or allowed by these rules, ... [t]he last day of the period so computed is to be included, unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or legal holiday"); TEX.R. CIV. P. 329b(c) (providing that "[i]n the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period").

After signing its December 26, 2007 order, the trial court "ha[d] plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions [were] overruled, either by a written and signed order or by operation of law, whichever occurs first." *See* TEX.R. CIV. P. 329b(e). Thus, contrary to appellants' assertions, the trial court still had plenary power over the case when it signed its amended sanctions order on January 11, 2008. In regard to appellants' argument that the trial court could not have entered sanctions because Fitzpatrick and Guion did not file their sanctions motions within thirty days of the final judgment, we note that a trial court may impose sanctions after a judgment is entered "so long as it retains plenary jurisdiction." *Malone v. Hampton*, 182 S.W.3d 465, 468 (Tex.App.-Dallas 2006, no pet.) (citing *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex.1996) (per curiam)). Here, the sanctions motion was necessarily filed more than thirty days after final judgment because the sanctionable conduct did not begin until November 16, 2007 and continued through December 14, 2007. Appellants have not cited any authority immunizing a party for sanctionable conduct during this period. Such a rule would run contrary to general authority indicating that a sanctions order is not required to be included in a final judgment, *see Lane Bank Equipment Co. v. Smith Southern Equipment, Inc.*, 10 S.W.3d 308, 313 (Tex.2000), and that a trial court retains authority to impose sanctions so long as it retains plenary jurisdiction. *See Scott & White Mem'l Hosp.*, 940 S.W.2d at 596. Accordingly, we hold that the trial court did not err in entering sanctions on the ground that the sanctions motion was not timely filed.

In regard to appellants' assertions that the mere act of filing a new trial motion is not sanctionable, the trial court lacked authority to enter sanctions, and the trial court did not provide appellants with notice of the sanctions, we note that Texas courts "have the inherent power to sanction for an abuse of the judicial process that may not be covered by any specific rule or statute." *See Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 522 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Kings Park Apartments, Ltd. v. Nat'l Union Fire Ins. Co.*, 101

S.W.3d 525, 541 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Island Entm't, Inc. v. Castaneda*, 882 S.W.2d 2, 5 (Tex. App.-Houston [1st Dist.] 1994, writ denied). The inherent power to sanction "exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *Houtex Ready Mix Concrete & Materials*, 226 S.W.3d at 522. "In applying its inherent power to impose sanctions, a trial court must make findings to support its conclusion that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions." *Id.*

 Here, the trial court directly tied its sanctions order to appellants' making of false representations in obtaining an evidentiary hearing and purposefully delaying the case. Although the trial court did not cite its specific authority in its order, the court detailed the conduct that served as the basis for the sanctions, found appellants' conduct to be "egregious," and found that appellants committed "an abuse of the judicial process." The court also found appellants had interfered with the court's "core functions" and had acted "in bad faith [ ] to obstruct and interfere with the judicial process." We conclude that the trial court based its sanctions order on its inherent power to impose sanctions.

The trial court also made specific findings that appellants had made misrepresentations to the court to obtain an evidentiary hearing that they never intended to pursue and, thus, delayed the case. The trial court noted that appellants did not provide, as ordered by the trial court, the witness list or other information in preparation for this evidentiary hearing and did not provide notice that they intended to pass the hearing. The court found that, by their conduct, appellants required the court and parties to prepare for an evidentiary hearing and subpoena witnesses.

The court, in order to determine a proper sanction tied directly to the conduct at issue, received evidence on the amount of time expended and fees incurred by the parties and witnesses in preparing for the evidentiary hearing. The court also recited that, prior to imposing the sanctions, at a November 21, 2007 hearing, it had put appellants on notice that it believed that appellants, by requesting the evidentiary hearing, were engaging in stalling tactics, and it warned appellants that they would face sanctions if they passed the evidentiary hearing that they were requesting. At the time it provided these warnings, the trial court had already entered multiple orders in the case regarding appellants' discovery abuse and general conduct throughout the entire case.

Despite these warnings, at the December 14, 2007 evidentiary hearing, appellants immediately passed the evidentiary hearing, and the trial court again notified appellants that it intended to impose sanctions for appellants' conduct. Appellants offered no explanation as to why they had failed to provide the trial court, parties, or witnesses with any advance notice that they intended to pass the hearing and why they had not supplied the trial court or parties with any of the information ordered by the trial court in preparation for the evidentiary hearing. Shea challenged the trial court's ability to enter sanctions at the hearing, but then invited Fitzpatrick and Guion to file a written motion for sanctions, to which he agreed to respond. The trial court then stated on the record that it would like for Fitzpatrick and Guion to file a written sanctions motion before it decided what sanctions would be appropriate, and it specifically set the sanctions issue for submission at 8:00 a.m. on December 31, 2008. Fitzpatrick and Guion filed their motion, which was supported by

evidence, and appellants failed to respond to the motion.

In sum, the trial court did not sanction appellants merely for filing a new trial motion, the trial court awarded sanctions within its plenary power, the trial court had authority to enter sanctions, and appellants were provided notice of the sanctionable conduct and of the sanctions hearing. Accordingly, we hold that the trial court did not abuse its discretion in imposing sanctions against appellants.

We overrule appellants' fourth and fifth issues.

### Conclusion

We reverse the judgment of the trial court for a new trial on the issue of damages. We affirm the judgment of the trial court in all other respects, including the trial court's imposition of death penalty sanctions against appellants as to liability and the trial court's imposition of sanctions against appellants for their conduct related to the proceedings on their new trial motion.