

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00038-CV
_____

IN THE INTEREST OF N.B., A CHILD

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2013-505,806, Honorable William R. Eichman II, Presiding

July 22, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

In this accelerated appeal, K.S. contests the trial court's termination of her parental rights to her child, N.B.[1] K.S. contends that the trial court violated her due process rights by allowing her attorney to withdraw after the final hearing had begun and further contests the legal and factual sufficiency of the evidence to support the trial court's order for termination. The trial court terminated K.S.'s parental rights under section 161.001(1)(D), (E), and (O). See TEX. FAMILY CODE ANN. § 161.001(1)(D), (E),

---

[1] We will refer to appellant as "K.S." and to the child subject of this suit as "N.B." See TEX. R. APP. P. 9.8.

(O). (West 2014).[2]  K.S. does not contest the trial court's determination that termination of her parental rights is in N.B.'s best interest.  *See* § 161.001(2).  We will affirm the trial court's judgment.

## Factual and Procedural Background

K.S. was a teenager when she became pregnant with N.B.  She was on juvenile probation at the time.  As part of her probation, she was drug tested.  In October of 2012, she tested positive for cocaine and marijuana.  At that time, K.S. was pregnant with N.B.  However, K.S. claims that she was unaware of her pregnancy at the time of the positive drug test.  N.B. was born on January 23, 2013.  As a result of the positive drug test, the Department filed a petition for termination of K.S.'s parental rights in February of 2013.  The Department was named temporary managing conservator of N.B. on March 6, 2013.

Also on March 6, 2013, the trial court entered its Order for Actions Necessary for Return of Child.  Also included in this order is the requirement that K.S. obtain and maintain stable housing and employment, avoid contact with individuals using illegal drugs, and participate in individual therapy as offered and approved by the Department.  Included in the order is the requirement that K.S. "[p]articipate in and complete all tasks and services as specified in the service plan as approved, adopted or ordered by the Court and any subsequent service plans signed by or delivered to [K.S.]"

On April 8, 2013, K.S. signed a family service plan which specified that K.S. was to complete psycho-social evaluation with Brenda Wilbanks; complete twelve hours of

---

[2] Further reference to the Texas Family Code will be by reference to "§ ____" or "section ____."

parenting classes; maintain stable housing and employment; take random drug tests; and attend visitation with N.B.

On June 13, 2014, K.S. signed a "Family Service Plan Evaluation." While this document included an evaluation of K.S.'s compliance with prior service plan requirements, it also indicates K.S.'s agreement to certain new requirements. In accordance with these new requirements, K.S. agreed not to associate with anyone with prior CPS or criminal history; to attend Buckner's Transition Center at least once a month for job services; to obtain her high school diploma or G.E.D.; and to attend all of N.B.'s medical appointments.

The final hearing on the Department's termination petition was held on August 25, November 25 and 26, and December 4, 2014. Soon after the final hearing began and during the direct examination of K.S., K.S.'s attorney made a verbal motion to withdraw. K.S. objected but the trial court granted counsel's motion. The trial court then *sua sponte* granted K.S. a continuance. New counsel was appointed for K.S. on September 8 and a copy of the transcript of the testimony adduced at the August 25 hearing was provided to new counsel. Nearly three months passed before the final hearing resumed to afford K.S.'s new counsel an opportunity to prepare. At the conclusion of the final hearing, the trial court entered an order terminating K.S.'s parental rights to N.B. finding that K.S. had violated section 161.001(1)(D), (E), and (O), and that termination would be in N.B.'s best interest. It is from this order that K.S. appeals.

By her appeal, K.S. presents four issues.  By her first issue, K.S. contends that the trial court violated her due process rights by allowing her attorney to withdraw during testimony at the final hearing.  By her remaining issues, K.S. challenges the legal and factual sufficiency of the evidence establishing that she committed the acts described by section 161.001(1)(D), (E), and (O).  K.S. does not present an issue challenging the trial court's determination that termination of K.S.'s parental rights is in N.B.'s best interest.

## Attorney's Withdrawal

By her first issue, K.S. contends that the trial court violated her due process rights by allowing her attorney to withdraw from representation during the final hearing. The Department concedes that the trial court abused its discretion, but contends that such error was harmless under the circumstances of this case.

A trial court's granting of a motion to withdraw is reviewed for an abuse of discretion.  *Sims v. Fitzpatrick*, 288 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  A trial court abuses its discretion if the court acts without reference to guiding rules or principles, or if its action is arbitrary or unreasonable.  *See In re K.S.*, No. 02-14-00073-CV, 2014 Tex. App. LEXIS 8693, at *17 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007), and *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004)).  It is an abuse of discretion for a trial court to grant a motion to withdraw that does not comply with the requisites of Texas Rule of Civil Procedure 10.  *Sims*, 288 S.W.3d at 100; *see* TEX. R. CIV. P. 10.  However, "such error may be harmless if the court allows the party time to secure new counsel and time for the new counsel to investigate the case and prepare

4

for trial." *Sims*, 288 S.W.3d at 100 (quoting *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.—Dallas 2001, pet. denied)).

As previously mentioned, the Department concedes that the oral motion to withdraw that was presented by K.S.'s counsel at that August 25 hearing did not comply with Rule 10 because the motion was not written. *See* TEX. R. CIV. P. 10. But, the Department contends that the trial court rendered this error harmless by appointing K.S. new counsel on September 8 and continuing the final hearing until November 25. We agree with the Department and conclude that the trial court's continuance of nearly three months to allow new counsel to prepare for the hearing rendered its error of granting the deficient motion harmless. *See Gillie*, 65 S.W.3d at 222 (continuance of nearly four months sufficient to render erroneous withdrawal harmless); *Walton v. Canon, Short & Gaston, P.C.*, 23 S.W.3d 143, 148-49 (Tex. App.—El Paso 2000, no pet.) (fifty days continuance sufficient to render erroneous withdraw harmless). Further, even if nearly three months could be considered an insufficient amount of time to prepare for the final hearing, K.S. did not offer any evidence to show that new counsel did not have adequate time to investigate the case and prepare for trial. *See In re K.S.*, 2014 Tex. App. LEXIS 8693, at *18-20 (twenty-eight days sufficient if no showing that this was an inadequate period for new counsel to prepare for hearing).

While we must conclude that the trial court erred in granting counsel's oral motion to withdraw, we also conclude that the trial court rendered this error harmless by affording new counsel nearly three months to prepare before resuming the final hearing. We overrule K.S.'s first issue.

By her remaining issues, K.S. challenges the sufficiency of the evidence establishing the predicate acts required to justify the termination of her parental rights. Specifically, K.S. challenges the sufficiency of the evidence to establish that she knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, section 161.001(1)(D), that she engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, section 161.001(1)(E), and that she failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for more than nine months as a result of the removal of the child for abuse or neglect, section 161.001(1)(O). As previously mentioned, K.S. does not challenge the trial court's finding that termination of her parental rights is in N.B.'s best interests. *See* § 161.001(2).

Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. As such, we are

required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes both: (1) one or more acts or omissions enumerated under section 161.001(1); and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). This standard, which focuses on whether a

reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Predicate Act or Omission

Because proof of only one statutory predicate ground is necessary to support a termination of parental rights, *see In re A.V.,* 113 S.W.3d at 362, we will focus our analysis on the evidence to support the trial court's finding under section 161.001(1)(O), that K.S. failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child.[3]

This Court has consistently held that "termination under subsection (O) does not allow for consideration of excuses for noncompliance nor does it consider 'substantial compliance' to be the same as completion." *In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.) (quoting *In re J.R.*, No. 07-12-00115-CV, 2012 Tex. App. LEXIS 7748, at *12 (Tex. App.—Amarillo Sept. 11, 2012, no pet.) (mem. op.) (citing *In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)); *see also In re K.B.*, No. 07-11-00503-CV, 2012 Tex. App. LEXIS 3877, at *9-10 (Tex. App.—Amarillo May 16, 2012, no pet.) (mem. op.); *In re Y.G.*, No. 07-11-00349-CV, 2012 Tex. App. LEXIS 1572, at *14 (Tex. App.—Amarillo Feb. 29, 2012, no pet.) (mem. op.); *In re D.S.C. V*, No. 07-11-00287-CV, 2011 Tex. App. LEXIS 9551, at *5-6 (Tex. App.—Amarillo Dec. 6, 2011, no pet.) (mem. op.) (per curiam).

K.S.'s primary contention relating to the sufficiency of the evidence that she failed to comply with a court order is that the instances of noncompliance evidenced by the Department were not specifically ordered by a court order. K.S. acknowledges that the trial court's order specifically required her to participate in parenting classes, individual

---

[3] K.S. does not challenge the sufficiency of the evidence establishing that the Department has been the temporary managing conservator of N.B. for more than nine months or that the removal of N.B. was due to abuse or neglect. *See* § 161.001(1)(O).

counseling "as offered or approved by the Department," psychological evaluation, and a substance abuse screening. K.S. does not dispute that the order entered by the trial court contained a provision that she "[p]articipate in and complete all tasks and services as specified in the service plan as approved, adopted or ordered by the Court and any subsequent service plans signed by or delivered to [K.S.]" The record contains a family service plan that was signed by K.S. on April 8, 2013, which specified that K.S. was to complete psycho-social evaluation with Brenda Wilbanks; complete twelve hours of parenting classes; maintain stable housing and employment; take random drug tests; and attend visitation with N.B. K.S. subsequently signed a "Family Service Plan Evaluation" on June 13, 2014, that indicates that K.S. agreed not to associate with anyone with prior CPS or criminal history; to attend Buckner's Transition Center at least once a month for job services; to obtain her high school diploma or G.E.D.; and to attend all of N.B.'s medical appointments. K.S.'s contention is that the language in the court's order requiring her to comply with subsequent service plans that she signed is part of the "boilerplate list of tasks for all parents." However, K.S. identifies no authority that establishes that language in a court order which is preprinted or "boilerplate" need not be complied with by a parent. K.S. cites this Court's opinion in *In re B.L.R.P.*, 269 S.W.3d 707, 710-11 (Tex. App.—Amarillo 2008, no pet.), in support of her position that a court order must specifically identify those actions which must be taken to obtain return of the child. However, *In re B.L.R.P.* stands only for the proposition that there must be a court order rather than simply a Department-generated service plan. *Id.* Further, the evidence establishes that K.S. signed the April 8, 2013 and June 13, 2014 service plans. Consequently, she was aware of and, at least impliedly, agreed to these

10

requirements. As such, we conclude that the March 6, 2013 trial court order required K.S. to complete the additional requirements contained in the April 8, 2013 and June 13, 2014 service plans, because both of these service plans were signed by K.S.

K.S. also contends that she is in compliance with the court-ordered services. She points out that she completed her parenting classes, completed her empowerment classes, remained drug free, and had stable housing and employment. K.S. also points out that she attended counseling with Wilbanks but she cannot "complete" this service since it is Wilbanks who is to determine when K.S. has completed counseling. However, even looking only at these specified instances of "compliance," the evidence is not so clear. Martinez, a Department caseworker, testified that K.S. reported working at seven different jobs over the two years between N.B.'s birth and the conclusion of the final hearing. Martinez further testified that K.S. appeared to hold these jobs for about a month and indicated that such an employment history is not what would be considered stable employment. In addition, while K.S. did attend counseling, Wilbanks testified that K.S. cancelled their session in October 2014 and failed to attend their scheduled session in November 2014. Thus, during the final hearing, K.S. chose to cease participating in counseling, even though the court order and service plans required her continued participation.

In addition to the above, there were other services ordered by the service plans that the evidence established that K.S. failed to comply with. While ordered to utilize the services offered through the Buckner Transition Center once a month, Martinez testified that K.S. only went to the facility one time. K.S. was ordered to attend a program to help her obtain her high school diploma or G.E.D. but, according to

Martinez, K.S. did not attend any such program. Also, K.S. was not to associate with anyone with prior CPS or criminal history. However, evidence was presented that K.S. resided with her boyfriend, who had a criminal history, and continued to associate with members of her family that she knew to have prior CPS and criminal history. Further, there were instances when K.S. would lie in an attempt to conceal her association with individuals she knew she was prohibited from associating with. There was also evidence that would allow the fact finder to conclude that K.S. continued to associate with individuals that she knew were using illegal drugs.

The evidence discussed in the preceding paragraphs, when viewed in the light most favorable to the finding, is sufficient for a reasonable trier of fact to form a firm belief or conviction that K.S. failed to comply with court-ordered services. *See In re J.F.C.,* 96 S.W.3d at 266. As such, the evidence is legally sufficient to support the trial court finding of the predicate act under subsection 161.001(1)(O). This same evidence when viewed in a neutral light is also sufficient for a factfinder to reasonably form a firm belief or conviction that K.S. did not comply with the services ordered by the trial court. *See In re C.H.,* 89 S.W.3d at 25. As such, the evidence was factually sufficient to support the trial court's finding of a predicate act under subsection 161.001(1)(O).

Remembering that proof of one statutory predicate ground is all that is needed to support a termination of parental rights, *see In re A.V.,* 113 S.W.3d at 362, we need not address K.S.'s other issues regarding predicate grounds under subsections (D) and (E). *See* TEX. R. APP. P. 47.1.

12

Best Interest of the Child

As previously mentioned, K.S. does not challenge the sufficiency of the evidence supporting the trial court's determination that termination of her parental rights was in N.B.'s best interest. An appellate court cannot reverse a trial court's decision on a ground not presented in the appellate briefs, i.e., "unassigned error." *In re C.M.R.*, No. 02-07-00394-CV, 2008 Tex. App. LEXIS 8712, at *14 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (per curiam) (mem. op.) (citing *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam)). Because K.S. does not challenge the trial court's best interest finding, we may not address the sufficiency of the evidence to support this finding. *See In re B.L.D.*, 113 S.W.3d 340, 350-51 (Tex. 2003) (declining to extend fundamental error doctrine to termination cases for review of unassigned error); *In re C.M.R.*, 2008 Tex. App. LEXIS 8712, at *14.

## Conclusion

Having overruled K.S.'s issue regarding the withdrawal of her attorney and concluding that the evidence was sufficient to support termination, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Pirtle, J., concurring in result.

13