

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00095-CV

IN THE MATTER OF THE MARRIAGE OF SARAH GLYNN
AND TONY GLYNN AND IN THE INTEREST OF T.G., A CHILD

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2010-552,758, Honorable John J. "Trey" McClendon, Presiding

December 31, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

In this appeal from a divorce decree, appellant Tony Glynn, appearing *pro se,* challenges orders of the trial court that allowed his attorney to withdraw and denied him a continuance, and challenges the division of the marital estate.  Finding no abuse of discretion by the trial court, we will affirm its judgment.

Background

Sarah Glynn filed for divorce in June 2010, alleging her marriage to Tony Glynn (Glynn) had become insupportable.  Appearing through attorney Angie Trout, Glynn answered and filed a counter-petition for divorce in August 2010.  In an amended

pleading Sarah Glynn alleged the marriage was insupportable because Glynn had committed adultery, was convicted of a felony, had been incarcerated in state and federal penitentiaries, and was facing "additional federal charges." Glynn alleged in a later pleading that Sarah Glynn had committed adultery.

In an April 27, 2012 motion, attorney Trout sought leave to withdraw from her representation of Glynn. She asserted good cause for withdrawal existed because she was "unable to effectively communicate with Tony Glynn in a manner consistent with good attorney-client relations." According to the motion, Glynn's last known address was a federal corrections facility in Terre Haute, Indiana. At the time of Trout's motion to withdraw, a final hearing in the divorce proceeding was scheduled for April 30, 2012. With the motion, Trout also filed a motion for continuance specifically requesting that Glynn "be given the opportunity and sufficient time to find new counsel for this matter." Trout requested the court to consider Glynn's incarceration and "he be given time considerations for this hardship." The court granted the motion for continuance by order signed on April 27, 2012. The order reset the case for final hearing on August 28, 2012.

On a date after the trial court's action,[1] Glynn filed a written objection to Trout's motion to withdraw and a motion for continuance. In the objection, he argued good cause for withdrawal was not shown because Trout could communicate with him by mail, e-mail, telephone, and through prison officials. In his motion for continuance, Glynn acknowledged the case was set for final hearing on August 28. Additional time

---

[1] When these documents were placed in the prison mail system for filing is not shown by the record. Both documents bear the district clerk's September 12, 2012 file stamp. An unsigned certificate of service attached to Glynn's objection to Trout's motion bears the date May 3, 2012.

2

was required, he continued, because "During the pendency of this case Tony Glynn has been in search of [an] attorney that will represent him at the final Hearing. Due to miscommunications, He has not hired a new attorney." Glynn added he relied "upon family and friends to help me hire a new attorney."

The record does not contain a signed written order ruling on Trout's motion to withdraw but in an unrelated motion mailed by Glynn to the trial court on August 20, 2012, Glynn explained he "had been represented by counsel at the beginning of these proceedings but . . . Trout formally withdrew from the legal representation of [Glynn] in this matter early on and [Glynn] has been unable to pay any other potential attorneys to hire them to assume this legal representation."

The case proceeded to disposition at a bench trial on August 28. Glynn appeared by telephone and was not represented by counsel. At the outset of the proceedings the court denied Glynn's motion for continuance, pointing out the case had been pending since June 2010. After the presentation of evidence the court granted the divorce on the ground of insupportability and divided the marital estate. Findings of fact and conclusions of law were neither requested nor filed and the record brought forward on appeal is meager.

Analysis

In his first issue, Glynn contends the trial court abused its discretion by granting Trout's motion to withdraw and by denying Glynn's motion for continuance.

3

Motion to Withdraw

We review a trial court's ruling on a motion to withdraw as counsel for abuse of discretion. *Sims v. Fitzpatrick,* 288 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Delgado v. Tex. Workers' Comp. Ins. Fund,* No. 03-03-00621-CV, 2006 Tex. App. LEXIS 2057, at *8 (Tex. App.—Austin Mar. 17, 2006, no pet.) (mem. op.). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, in other words, if the act is arbitrary or unreasonable. *See, e.g., Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

On written motion, for good cause shown, an attorney may be permitted to withdraw from representation of a party. TEX. R. CIV. P. 10. The rule does not define "good cause" but the Texas Disciplinary Rules of Professional Conduct provide considerations relevant to the good cause determination under rule 10. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (TEX. STATE BAR R. art. X, § 9); *Harrison v. Harrison,* 367 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (op. on rehearing); *In re A.R.,* 236 S.W.3d 460, 474 (Tex. App.—Dallas 2007, no pet.) (op. on rehearing); *In re Posadas USA, Inc.,* 100 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, orig. proceeding). The attorney seeking to withdraw bears the burden of showing good cause for withdrawal. *Harrison,* 367 S.W.3d at 830.

The record indicates the case had been on file for almost two years when Trout moved to withdraw on the ground she could not effectively communicate with Glynn. In

the motion for continuance Trout filed with her motion to withdraw, she added her inability to communicate was caused by Glynn's "current incarceration and other reasons." Trout's motion could have explained more fully how and why she could not effectively communicate with Glynn, and could have set forth the "other reasons." But on this record we will not find the trial court acted arbitrarily or without reference to guiding rules by finding good cause in Trout's stated reasons for seeking permission to withdraw.[2]

Moreover, even if we are mistaken and the trial court abused its discretion by granting the motion to withdraw, the record does not demonstrate the circumstances requiring reversal. We may not reverse a trial court's judgment unless the court's error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. TEX. R. APP. P. 44.1(a). Specifically, we will not reverse a trial court for an abuse of discretion unless the error caused harm. *Saba Zi Exploration, L.P. v. Vaughn,* No. 14-13-00325-CV, 2014 Tex. App. LEXIS 10311, at \*11-12 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, n.p.h.).

The trial court granted Trout's motion for continuance and reset the case for trial some four months thereafter. Glynn's assertion on appeal that he was unaware Trout had been allowed to withdraw is not supported by the record. Glynn's motion postmarked August 20 makes clear he knew then Trout had withdrawn. We find the

---

[2] We note that the comments to Disciplinary Rule 1.15's provisions on mandatory withdrawal, when addressing instances in which withdrawal requires a court's approval, states, "The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient." TEX. R. PROF'L CONDUCT, R. 1.15, Comment 3; *see* TEX. R. PROF'L CONDUCT, R. 1.03 (addressing communication with client).

time afforded Glynn by the trial court was sufficient for him to locate replacement counsel. Any error in granting Trout's motion to withdraw was therefore harmless. *See Gillie v. Boulas,* 65 S.W.3d 219, 221-22 (Tex. App.—Dallas 2001, pet. denied) (finding no harm shown when the trial court granted a deficient motion to withdraw but allowed the plaintiff almost four months after counsel's withdrawal to find new counsel); *Williams v. Bank One, N.A.,* 15 S.W.3d 110, 114 (Tex. App.—Waco 1999, no pet.) (finding error harmless when trial court allowed party's attorney to withdraw on deficient motion but granted party an additional forty-five days to secure new counsel and prepare for summary judgment hearing); *cf. Holt v. D'Hanis State Bank,* 993 S.W.2d 237, 240 (Tex. App.—San Antonio 1999, no pet.) (finding no error by trial court in granting Maryland resident more than thirty days to find replacement counsel for filing summary judgment response after granting original counsel's motion to withdraw).

Glynn's Motion for Continuance

We will not disturb a trial court's order denying a motion for continuance unless the trial court committed a clear abuse of discretion. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex. 2002). When the ground for a continuance is the withdrawal of counsel, the movant must show the failure to have representation at trial was not the result of his own fault or negligence. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986) (citing *State v. Crank,* 666 S.W.2d 91, 94 (Tex. 1984) (mot. for reh'g)); *see* TEX. R. CIV. P. 253 ("Except as provided elsewhere in these rules, absence of counsel will not be good cause for a continuance . . . when called for trial, except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record").

In the motion for continuance, Glynn explained he was unable to retain new counsel because of "miscommunications." The nature of the miscommunications was not shown but because of his inmate status Glynn argued he was forced to rely on "family and friends to help [him] hire a new attorney." Further insight into Glynn's situation emerges through the unrelated motion Glynn mailed to the trial court on August 20, in which he told the judge Trout "formally withdrew" from the representation "early on" and he was unable to retain replacement counsel for financial reasons. Nothing in the limited record before us indicates Glynn demonstrated to the trial court his failure to have representation at trial was not the result of his own fault or negligence. *Villegas,* 711 S.W.2d at 626. On this record we are unable to say the trial court clearly abused its discretion by denying Glynn's motion for continuance.

By his second issue Glynn argues the trial court mischaracterized certain items of his separate property as community property leading to a division of the marital estate that was not just and right. Interwoven into the argument is a contention that the trial court lacked sufficient information for its task because Glynn learned only minutes before trial that Trout was allowed to withdraw and was not present to represent him. Consequently, essential evidence was not admitted.

According to Glynn, the trial court wrongly characterized a rent house, a race car, and a trailer as community assets, awarding him the house and awarding Sarah Glynn the race car and trailer. Glynn concludes that he actually received no community property under the court's division because the other item he was awarded, a 2008 Chevrolet Avalanche, was repossessed prior to trial.

7

At trial, Sarah Glynn testified Glynn was incarcerated in prison for fifteen to twenty years of their twenty-three year marriage. Glynn testified the period was thirteen years. Sarah Glynn agreed the property in issue in the divorce was purchased with her income. She also testified the family dry cleaning business, apparently a proprietorship, was "upside down," having never made a profit. She valued the business's equipment at $3,900. Whether the equipment was subject to a lien and whether the business had value over the equipment value were not shown. She valued the family home at over $116,000 but testified it was encumbered by a lien of about $95,000. According to Sarah Glynn, she and Glynn owned a rent house generating rental income of about $500 per month. She testified their assets also included a 2007 Chevrolet Tahoe, an inoperable Mercedes-Benz automobile and trailer, collectively valued at $1,000, a "race car," a Chevrolet Avalanche, and a 2006 Dodge Magnum automobile, driven by their son. Other items of personalty she identified were two go-carts and a four-wheeler. She further testified of a $60,000 judgment in favor of a hospital for Glynn's pacemaker.

Alberta Brooks, a witness called by Glynn, testified Glynn obtained "grant money" to open the cleaners. He worked at the cleaners from "morning until night." In narrative testimony Glynn explained that Sarah Glynn was aware that Glynn "already had these things, race cars and all that stuff" before their marriage. Without documentary proof he testified he inherited the rent house from his sister. He further elaborated on cross-examination that the rent house secures an "equity loan" he obtained to fund the cleaners.

The court found fault in the breakup of the marriage. It awarded Glynn the rent house, personal property and cash in his possession, and the 2008 Avalanche. Sarah

Glynn was awarded the family home, personal property and cash in her possession, the other vehicles, including the "race car" and trailer, the dry cleaning business, the go-carts and four-wheeler, and an additional trailer. Primary liability for any indebtedness securing the items of property awarded generally followed the property although Glynn became primarily liable for the note secured by the Dodge Magnum automobile driven by their son.

In a decree of divorce, a trial court must "order a division of the estate of the parties in a manner that the court deems just and right." TEX. FAM. CODE ANN. § 7.001 (West 2006). The court may divide only the spouses' community property. *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex. 1985). Community property is property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002 (West 2006). Property of a spouse owned before marriage as well as property acquired during marriage by gift, devise, or descent, is the separate property of that spouse. TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.001(2) (West 2006). Whether property is properly characterized as community or separate is determined by the time and circumstances of its acquisition. *Leighton v. Leighton,* 921 S.W.2d 365, 367 (Tex. App.—Houston [1st Dist.] 1996, no writ). It is presumed that property possessed by either spouse during or on dissolution of marriage is community property rather than separate property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006).

A party claiming that property is separate property must prove the necessary facts by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (West 2006). Clear and convincing evidence means that "measure or degree of proof which will

9

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

To determine whether the trial court erred in characterizing property, we apply the abuse of discretion standard. *Boyd v. Boyd,* 131 S.W.3d 605, 617 (Tex. App.—Fort Worth 2004, no pet.). Under the abuse of discretion standard, applied in a family law case, legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant factors for determining whether the trial court abused its discretion. *Boyd,* 131 S.W.3d at 611; *Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); *see Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991) (turnover order). In a bench trial, the court, as fact finder, is the exclusive judge of the witnesses' credibility and the weight given their testimony, and is free to resolve any inconsistencies in the evidence. *Iliff v. Iliff,* 339 S.W.3d 74, 83 (Tex. 2011). It is free to believe some, all, or none of a witness's testimony. *Rivas v. Rivas,* No. 01-10-00585-CV, 2012 Tex. App. LEXIS 412, at *5 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.).

The trial court is vested with broad discretion in dividing the community estate and we presume it properly exercised that discretion. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex. 1981). A party complaining of the trial court's division of community property must be able to demonstrate from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Wilson v. Wilson,* 44 S.W.3d 597, 600 (Tex. App.—Fort Worth 2001, no pet.) (citing *Wallace v. Wallace,* 623 S.W.2d 723, 725 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd)). It is the responsibility of

10

the parties to the proceeding to produce evidence of the value of the properties to give the trial court a basis on which to make the division. *Wallace,* 623 S.W.2d at 725.

Given conflicting testimony, the prerogative of the court as fact finder to assign weight to testimony, and the absence of documentary evidence by Glynn supporting his contention of separate ownership, we find the trial court did not err in implicitly finding that Glynn did not meet the heavy burden of rebutting the community property presumption as to the items he contended were his separate property. He points to no evidence other than his testimony, and we are not shown in this record what documents or other proof Glynn could have offered tending to rebut the presumption. Nor does the record support Glynn's claim he was surprised on the morning of trial by Trout's absence. Rather, as noted, by filings before trial Glynn told the court Trout had withdrawn. Abuse of discretion in the division of the marital estate has not been demonstrated. Glynn's second issue is overruled.

## Conclusion

Having overruled Glynn's issues on appeal, we affirm the judgment of the trial court.


James T. Campbell
Justice


11